William B. Aitchison (OR Bar # 770095)
(*admitted pro hac vice*)
Public Safety Labor Group
3021 NE Broadway Street
Portland, Oregon 97232
Tel. (866) 486-5556
Will@PSLGlawyers.com

James Cunningham (CA Bar # 128974)
Law Offices of James J Cunningham
10405 San Diego Mission Road, Ste. 201
San Diego, California 92108-2174
Tel. (858) 693-8833
jimcunninghamlaw@gmail.com

Michael Napier (AZ Bar # 002603)
(*admitted pro hac vice*)
Napier, Coury & Baillie, P.C.
2525 E. Arizona Biltmore Circle, Ste. 135
Phoenix, Arizona 85016
Tel. (602) 248-9107
mike@napierlawfirm.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC KELLEY, PATRICK HESTERS, and ERIC DUNNICK, on behalf of themselves and similarly situated individuals,<br><br>                      Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO,<br><br>                      Defendant. | Case No.: 3:19-cv-00622-GPC-BGS<br><br>**PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF SETTLEMENT**<br><br>Date: February 5, 2021<br>Time: 1:30pm<br>Courtroom: 2D<br>Judge: Hon. Gonzalo P. Curiel |

# **Table of Contents**

TABLE OF AUTHORITIES ……………………………………………… ii - iv

I.    INTRODUCTION ………………………………………..…. 2

II.   CLAIMS ………………………………………………… 3

III.  PROCEDURAL BACKGROUND ……………………………… 4

IV.   SETTLEMENT TERMS ……………………………………… 5

V.    LEGAL STANDARD ………………………………………… 8

VI.   ARGUMENT …………………………………………… 9

   A. Bona fide disputes exist. ………………………………..…. 9

      1. *Cash-in-Lieu vs. Total Flex Dollar Value* ……………………..… 9-10

      2. *CTO Claim* ………………………………………..… 11

      3. *Liquidated Damages* ………………………………..… 11

      4. *Statute of Limitations* ……………………………… 12

      5. *Methodology for Calculating Damages* …………………..…. 12

   B. The settlement is reasonable ……………………………… 13

      1. The *Plaintiff's range of possible recovery* ………………..… 14

      2. *Stage of proceedings and amount of discovery completed* …………… 15

      3. *Seriousness of the litigation risks faced by the parties* ……………..…… 17

      4. *Scope of any release provision in the Settlement Agreement* …………… 17

      5. *Experience and views of counsel and the opinion of participating plaintiffs*………………………………………….… 17-19

      6. *Possibility of fraud or collusion* ……………………… 19

   C. The attorney fees are reasonable. …………………………..… 19

VII.  Conclusion …………………………………………… 24

# **Table of Authorities**

*Adams v. City & Cty. of Honolulu, No. CV 12-00667 BMK,* 2017 WL 2938195, at *3 (D. Haw. July 10, 2017) ………….…………………………..…………… 22

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57–58 (E.D.N.Y. 2010) ……. 14

*Almodova v. City & Cty. of Honolulu,* No. CV 07-00378 DAE-LEK, 2010 WL 1372298 (D. Haw. Mar. 31, 2010) ……………………..………..……….…...….. 22

*Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 1671489 (S.D. Cal. April 28, 2014)... 8

*Arellano et al. v. City of San Diego*, Case No. 18-cv-0229-GPC-BOS ……..………… 2

*Avila v. Cold Spring Granite Company*, No. 116CV001533AWISKO, 2018 WL 400315, at *12–13 (E.D. Cal., Jan. 12, 2018) …………….…………….…... 23

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) ……..…… 22

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) ………... 14

*Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV-1662 OWW MJS, 2011 WL 2648879, at *10 (E.D. Cal. June 30, 2011) …………………..…………… 22

*Browne v. American Honda Motor Co., Inc.*, No. CV 09-06750 MMM DTBX, 2010 WL 9499073, at *11–12 (C.D. Cal., Oct. 5, 2010) …………….………………. 24

*Chavez v. City of Albuquerque*, 630 F.3d 1300, 1312 (10th Cir. 2011)   ……..……... 13

*City of Burlington v. Dague*, 505 U.S. 557, 568 (1992)   ………….……….……...… 20

*Dashiell v. Cty. of Riverside*, No. EDCV1500211JGBSPX, 2018 WL 3629915, at *2 (C.D. Cal. July 19, 2018) …………………………………………………….………   8

*Del Gallego Demapan v. Zeng's Am. Corp.*, No. 18-CV-00010, 2019 WL 1120019, at *3 (D. N. Mar. I. Mar. 11, 2019) …………….……….……………….…..………… 22

*Del Gallego Demapan v. Zeng's Am. Corp.*, supra, 2019 WL 1120019, at *3 (D. N. Mar. I. Mar. 11, 2019) ……..………….……….…………….…………... 23

*Donkerbrook v. Title Guar. Escrow Servs., Inc.*, No. CIV. 10-00616 LEK, 2011 WL 3649539, at *2 (D. Haw. Aug. 18, 2011) ……..………….……………..… 22

*Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016) …………..……….......…. 3

*Flores v. City of San Gabriel*, No. LACV 12-4884 JGB (JCGx) (C.D. Cal. Nov. 5, 2018) (Doc. No. 128) ("Flores III") ………………..……….……… 13

*Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *10 (E.D. Cal. Oct. 31, 2012) ………….…………….…… 22

3:19-cv-00622-AJB-MDD

*Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF SHX, 2008 WL 5281665, at *12 (C.D. Cal. Dec. 15, 2008) …………………...………..……… 22

*Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ……………………………………………………………………… 14

*Knight v. Red Door Salons, Inc.*, No. 08–01520 SC, 2009 WL 248367, *5 (N.D. Cal. Feb. 2, 2009) ……………………………………………………... 14

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) ………………………………………..……… 22

*Kries, et al. v. City of San Diego*, Case No. 17-cv-1464-GPC-BOS ……………………… 2

*Kries et al. v. City of San Diego*, 2020 WL 3606613, at *7 (*quoting Larsen v. Trader Joe's Co.*, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014)) …….……….……….. 17

*Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dept. of Labor, Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) ……..………. 8

*Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 204 (1947) ………………………… 12

*McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 2:12-CV-03035-MCE-AC, 2018 WL 3474472, at *2 (E.D. Cal. July 19, 2018) …………………………………….... 22

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) ……………….………… 12

*Mitchell et al. v. City of San Diego*, Case No. 17-cv-2014-GPC-BGS ……..…………… 2

*Morgret v. Applus Technologies, Inc.*, No. 1:13-CV-01801- JLT, 2015 WL 3466389, at *17 (E.D. Cal., June 1, 2015) …….…………………..………… 24

*Murillo v. Pacific Gas & Elec. Co.*, No. 2:08-1974 WBS GGH, 2010 WL 2889728 …………………………………………………………… 24

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1164 (C.D. Cal. 2010). ……… 20

*Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ………………….....… 9

*Scott v. City of New York*, 592 F. Supp. 2d 475, 488 (S.D.N.Y. 2008) ……..………… 13

*Scott v. City of New York*, 592 F. Supp. 2d 475, 478 (S.D.N.Y. 2008) ……...……..… 16

*Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).. 8

*Smiley v. E.I. Dupont De Nemours and Co.*, 839 F.3d 325, 331 (3d Cir. 2016). ……..… 13

*Valladon v. City of Oakland*, No. C 06-07478 SI, 2009 WL 3401263, at *3 (N.D. Cal. Oct. 20, 2009) …………………………..……….………..………..……….………….... 16

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) …….……..… 22

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Vega v. Weatherford U.S., Limited Partnership*, No. 1:14-CV-01790-JLT, 2016 WL 7116731, at *17, fn. 2 (E.D. Cal., Dec. 7, 2016) …….……….….…….…... 23

*Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40 (1944) ……………………….. 12

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) 149 ...….. 12

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) …….……….….…..…….….…………….….…..….…….. 22

iv

## I.     INTRODUCTION

Plaintiffs Eric Kelley, Patrick Hesters, and Eric Dunnick, on behalf of themselves and similarly situated individuals who have consented to join the instant action ("Plaintiffs"), submit this Motion for Approval of Settlement and respectfully request that this Court enter an Order approving the Settlement Agreement and General Release ("Settlement Agreement") reached between the parties and dismissing this case with prejudice.

Plaintiffs, all of whom are or were employees of the City of San Diego Fire-Rescue Department, filed this collective action against the City for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. On July 2, 2020, this Court approved settlements in three related cases: *Kries, et al. v. City of San Diego*, Case No. 17-cv-1464-GPC-BOS; *Mitchell et al. v. City of San Diego*, Case No. 17-cv-2014-GPC-BGS; and *Arellano et al. v. City of San Diego*, Case No. 18-cv-0229-GPC-BOS (referred to collectively as "Related Cases").

The Related Cases had most of the same claims as in this litigation but did not include the City's firefighters as plaintiffs. The difference in terms of potential FLSA liability was significant. Where the plaintiffs in the Related Cases were treated by the City as due FLSA overtime when they worked more than 40 hours in a work week, the City has claimed the partial overtime exemption in 29 U.S.C. §207(k) for its firefighters engaged in fire suppression work, allowing it the latitude of not paying overtime until the significant majority of its firefighters work more than 212 hours in a 28-day work period. *See* 29 CFR § 553.230; Declaration of Will Aitchison, at 7, ¶29 ("Aitchison Decl.").

Plaintiffs seek the Court's approval of three documents: (1) The Settlement Agreement; (2) The Acknowledgment And Acceptance Of Settlement And Release Of Claims each Plaintiff receiving funds under the settlement will execute; and (3) A Notice Of Court-Approved Settlement Of FLSA Overtime Case Against The City Of San Diego,

3:19-cv-00622-AJB-MDD

which will be sent to each Plaintiff upon this Court's order. Cunningham Decl., Exhibits 1-3.[1]

On October 13, 2020, the San Diego City Council approved the settlement amount in this matter. Aitchison Decl., at 7, ¶32. On October 16, 2020, Plaintiffs' counsel sent to each Plaintiff a notice explaining the settlement, how damages were calculated, how the net settlement to each Plaintiff was computed, and how the settlement proceeds would be paid. Declaration of James Cunningham, at 4, ¶21, Ex. 4 ("Cunningham Decl."). The notice advised each Plaintiff that this motion would be filed and invited Plaintiffs with objections to the settlement to lodge such objections with Plaintiffs' counsel. On November 2, 2020, Plaintiffs' counsel sent the settlement agreement itself to all Plaintiffs. *Id.* To date, no Plaintiff has objected to the settlement. *Id.*, at ¶22.

Submitted with this motion are the individual declarations of Plaintiffs' Counsel, James Cunningham, Michael Napier ("Napier Decl."), and Will Aitchison.

## II.   CLAIMS

Plaintiffs' Complaint alleged that the City was violating the FLSA in four ways, each stemming from the City's alleged miscalculation of the "regular rate of pay," which the FLSA requires be multiplied by time and one-half to produce the FLSA overtime rate. *See* 29 U.S.C. §207(a). First, Plaintiffs alleged that the City failed to comply with *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), in which the court ruled that (1) cash payments to an employee provided through a flexible benefits plan ("FBP") must be included in the regular rate of pay when calculating overtime compensation under the FLSA; and (2) if the cash payments to employees are not "incidental," the entire amount of the employer's contribution to a FBP, including contributions used to purchase health insurance, must be included in the FLSA's overtime calculations. *See* Complaint, at 7.

---

[1] As the Settlement Agreement is in circulation for signatures, the parties are submitting an unsigned version of the Agreement. They will submit the signed version as soon as it is executed.

Second, Plaintiffs derivatively alleged that the City's system of using compensatory time off ("CTO") to compensate Plaintiffs for overtime hours worked violated the FLSA because the City's cash payments for unused CTO were not paid at the FLSA's regular rate of pay. *Id.*, at 8. Third, Plaintiffs alleged that the City's "Cycle Time" system resulted in a failure to properly count all hours worked by firefighters in certain work periods. *Id.* Fourth, Plaintiffs alleged that the City violated the FLSA by using an improper "divisor and multiplier" formula to calculate the regular rate of pay. *Id.*, at 9. Plaintiffs sought back pay, an equivalent amount as liquidated damages, and their reasonable attorney fees. *See* 29 U.S.C. § 216(b).

## III.   PROCEDURAL BACKGROUND

This action was based in large part on the Ninth Circuit's decision in *Flores*, in which the court held that cash payments made to employees through a FBP were to be included in the regular rate of pay when calculating overtime. Pursuant to *Flores*, on or about July 1, 2017, the City began to include cash-in-lieu payments made to employees through its FBP into their FLSA overtime rates. *See* Memorandum of Points and Authorities at 15, submitted Joint Motion For Approval Of Settlement in the Related Cases and attached as Exhibit 7 to the Declaration of Will Aitchison. On or about July 1, 2019, the City began to include all payments it made to the FBP in its regular rate of pay calculations. *Id.*, at 21 n.6. Plaintiffs' position is that the changes in the City's pay practices did not resolve its liability under *Flores* for retroactive payments and Plaintiffs have contested the formula the City used to calculate the FLSA overtime rate. The amounts each Plaintiff will receive under the settlement is attached as Exhibit A to the settlement agreement.

On April 2, 2019, Eric Kelley, Patrick Hesters, and Eric Dunnick filed this action on behalf of themselves and similarly situated current and former "Group E" employees of the City of San Diego. ECF No. 1. Group E is comprised of the following positions, all in the City's Fire Department: Air Operations Chief, Assistant Fire Marshal, Fire Battalion Chief, Fire Captain, Fire Engineer, Fire Fighter I, Fire Fighter II, Fire Fighter

3:19-cv-00622-AJB-MDD

III, Fire Helicopter Pilot, Fire Prevention Inspector I, Fire Prevention Inspector II, Fire Prevention Supervisor, and Fire Recruit. ECF No. 57.

The City filed its Answer on June 17, 2019. ECF No. 22. On July 8, 2019, Plaintiffs filed a motion to strike several of the affirmative defenses in the Answer. ECF No. 27. In response, and with the agreement of Plaintiffs, the City filed an Amended Answer on July 26, 2019. ECF No. 31.

Plaintiffs moved for certification of a collective action on December 10, 2019. ECF No. 57. Plaintiffs' motion for certification was later withdrawn after the City agreed to stipulate to conditional certification. ECF No. 60. The Court granted conditional certification on December 10, 2019 and ordered that notice of the opportunity to join the case be provided to all putative plaintiffs in Group E. ECF No. 58. A Court-approved notice was mailed to all putative plaintiffs in the action and a deadline established for the filing of Consents To Join to be filed with this Court. ECF No. 57-1. A total of 705 Plaintiffs eventually filed consents to join the action. Cunningham Decl., at 3, ¶14.

The parties participated in a settlement conference before Magistrate Judge Bernard G. Skomal on July 10, 2020, at which the parties agreed to the material terms of a settlement. ECF No. 81. On August 14, 2020, the parties finalized the terms of the Settlement Agreement.

## IV.    SETTLEMENT TERMS

The parties agreed to settle the claims raised by Plaintiffs in this action for a total sum of $3,400,000. The settlement amount is comprised of three elements: A payment of back overtime of $1,575,000, liquidated damages of $1,575,000, and a payment by the City of $250,000 towards Plaintiffs' attorneys' fees and litigation costs. Aitchison Decl., Ex. 1, at 4.

The settlement was produced after an extensive process of cooperation between Plaintiffs and the City with respect to the calculation of potential damages. Both parties retained experienced damages experts. Aitchison Decl. at 7, ¶33. The City's electronic payroll system, which records the hours worked by as well as the compensation paid to

employees, is a comparatively complicated one, using over 100 pay codes. *Id.*, at 7, ¶34. While the City provided initial explanations of the codes, the manner in which the codes interacted to generate overtime pay was at times unclear. *Id.*, at 7, ¶35. Plaintiffs submitted numerous questions to the City about the operation of the codes, all of which the City timely answered. *Id.* As part of this process, the City provided Plaintiffs with all the electronic payroll data it maintained on Plaintiffs. *Id.* at 7-8, ¶36.

Counsel for both parties as well as their damages experts then participated in several extended phone conferences to discuss the proper calculation of damages using each party's theories of the case. Aitchison Decl. at 8, ¶39. Through this exchange of information, Plaintiffs verified that the City's damages expert was properly calculating the amount of damages that would be awarded under the different theories. *Id.* at 8, ¶40. From that point, Plaintiffs agreed that the City's expert would conduct the initial calculation of damages, subject to verification by Plaintiffs' expert. *Id.*

In terms of process, the City's expert calculated each plaintiff's individual overtime damages on the basis of either a 28-day work period (for most Plaintiffs) or a 7-day workweek (for those Plaintiffs assigned to non-fire suppression duties). *Id.*, at 8, ¶41. The City's expert determined all FLSA overtime hours and applied cash-in-lieu or full FBP credits to recalculate FLSA premium overtime earned using both the City's and Plaintiffs' methodologies for calculating the regular rate of pay. *Id.*, at 8, ¶42. The City's expert then deducted from any underpaid amounts for that 7-day workweek the credits to which the parties agree the City is entitled for payments made in excess of the minimums required by the FLSA. *Id.*, at 8, ¶43.

The total potential damages for each Plaintiff were based on the applicable statute of limitations, as each Plaintiff has an individual statute of limitations depending upon when the Plaintiff consented to join the lawsuit. *Id.*, at 8, ¶44. For purposes of settlement, the parties agreed to calculate damages under *Flores* based on Plaintiffs' cash-in-lieu, total FBP, and CTO theories applying a 3-year statute of limitations and assuming that overtime backpay would be doubled based on an award of liquidated damages. (The same

assumptions of liability were applied in the related cases.)  The expert's calculations were that if the City's theory of the case on methodology was accepted by the Court, damages would be $1,669,062. If Plaintiffs' theories of methodology were entirely accepted by the Court, damages would be $11,216,946 . *Id.*, at 9, ¶46. The parties applied to these calculations the same formulas and approach used in the Related Cases to produce the proposed settlement of $3,400,000. *Id.*

The total settlement amount includes a payment by the City towards Plaintiffs' attorneys' fees and litigation costs in the amount of $250,000. Each Plaintiff executed an attorney-client agreement with counsel that called for the following contingent fee structure: 33% of the gross sum recovered if a recovery happened at least two weeks prior to trial, 40% of the gross sum recovered if recovery occurred within two weeks of trial through the conclusion of trial, and 50% of the gross sum recovered if recovery occurred during or through an appeal process. Cunningham Decl. at 5, ¶30, Ex. 6. Under the attorney-client agreement, each Plaintiff's attorney fee and litigation cost responsibility would be offset by the Plaintiff's pro-rata share of attorneys' fees and litigation costs recovered from the City.

Subsequent to the closure of the period in which individuals could opt-into this action, and as it became clear that the City had reached a tentative settlement in the Related Cases, Plaintiffs' attorneys announced to Plaintiffs that they were reducing the contingent fee percentage to 25.0% of the gross sum recovered plus each Plaintiff's pro-rata share of litigation costs. Aitchison Decl. at 11, ¶62. In the Settlement Agreement, Plaintiffs' Counsel agreed that they would further reduce the contingency fee by an additional $127,500, leaving the final contingent fee to be paid by Plaintiffs at 13.89%. The Settlement Agreement sets forth the following attorney fee calculations:

$3,400,000, Total Settlement Amount

$850,000, Plaintiffs' Contingent Fees (Total Settlement Amount x 25.0%)

*Less* ($250,000), Payment Towards Attorney Fees by City

$600,000, Remainder Of Fees To Be Paid By Plaintiffs

*Less* ($127,500), Agreed-Upon Further Reduction in Contingent Fees
$472,500, Remaining Contingent Fees Remaining To Be Paid By Plaintiffs

13.89%, Remaining Contingent Fees As Percentage Of Total Settlement Amount
($472,500 / $3,400,000)

21.2%, Total fees ($472,500 + $250,000) As Percentage Of Total Settlement
Amount ($722,500 / $3,400,000)

## V.   LEGAL STANDARD

Because an employee cannot waive claims under the FLSA, those claims may not
be settled without supervision of either the Secretary of Labor or a district court. *See
Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dept. of Labor, Emp't Standards
Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Dashiell v. Cty. of
Riverside*, No. EDCV1500211JGBSPX, 2018 WL 3629915, at *2 (C.D. Cal. July 19,
2018) ("FLSA claims may only be waived or settled if settlement is supervised by the
Secretary of Labor or approved by a district court."). A court's inquiry proceeds from the
proposition that a settlement is only appropriate if it produces a "fair and reasonable
resolution of a *bona fide* dispute." *Lynn's Food Stores*, 679 F.2d at 1355. As this Court
noted in the Related Cases, a *bona fide* dispute "exists when there are legitimate
questions about 'the existence and extent of Defendant's FLSA liability.'" *Kries*, No. 17-
cv-1464-GPC-BGS, 2020 WL 3606613 at *2 (S.D. Cal. July 2, 2020), *quoting
Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 1671489 (S.D. Cal. April 28, 2014).

While the Ninth Circuit has not weighed in as to the criteria district courts should
consider in determining whether an FLSA settlement should be approved, recent caselaw
in the Circuit – including this Court's decision in the Related Cases – has followed the
approach of *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D.
Cal. 2016) in determining whether a settlement is fair and reasonable. In *Selk*, the court
looked to the following: "(1) the plaintiff's range of possible recovery; (2) the stage of
proceedings and amount of discovery completed; (3) the seriousness of the litigation risks

8

faced by the parties; (4) the scope of any release provision in the Settlement Agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." 159 F. Supp. 3d at 1173. "In considering these factors under a totality of the circumstances approach, a district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* If, after considering these factors, the court determines that "the settlement reflects a reasonable compromise over issues that are actually in dispute," then "the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Id.* (quoting in part *Lynn's Food Stores*, 679 F.2d at 1354). At the same time, the court should also bear in mind the strong presumption in favor of finding that a settlement is fair. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

As will be shown below, the factors weigh in favor of finding the settlement to be a "fair and reasonable" resolution of the parties' bona fide disputes.

## VI.  ARGUMENT

### A.  Bona fide disputes exist.

Although the parties agree that, under *Flores*, the City has some liability under the FLSA, there are five bona fide disputes over the extent of the City's liability: (1) Whether the City underpaid FLSA overtime by not including in FLSA overtime the full amount of its payments to the FBP; (2) Whether the City underpaid CTO by not including FBP compensation when cashing out CTO; (3) Whether the City should pay liquidated damages in addition to back pay; (4) Whether the FLSA's two or three-year statute of limitations should apply; and (5) What methodology should apply to calculate the amount of damages. Each of these disputes will be described below.

#### 1.  *Cash-in-Lieu vs. Total Flex Dollar Value*

FBPs, an alternative to employer-provided health insurance, begin with an employer's payment to a FBP of an amount of money on behalf of employees. Employees then have the option of using their FBP credits to choose from a menu of

3:19-cv-00622-AJB-MDD

insurance options. Some FBPs, like the City's, allow the employee to use their FBP credits to receive cash in lieu of health benefits.

*Flores* held that FBP cash-in-lieu payments must be included in the FLSA overtime rate. *Flores*, 824 F.3d at 898. *Flores* also held that if the cash payments are large enough that they are not "incidental," then the FBP is no longer *bona fide* under the FLSA and the entire amount of the employer's FBP contribution must be included in the FLSA overtime rate. *Id.*, at 900.

While the FLSA excludes from the regular rate of pay "contributions irrevocably made by an employer to a trustee or third person pursuant to a *bona fide* plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees," 29 U.S.C. § 207(e)(4), it does not define the term "*bona fide* plan." The Department of Labor stepped in with 29 C.F.R. § 778.215, generally stating that a benefits plan may qualify as "bona fide" even though an "incidental" part of the employer's plan contributions is paid directly to an employee in cash. *See* 29 C.F.R. § 778.215(a)(5). The DOL later issued an opinion letter that the threshold for "incidental" contributions was 20% or less of all contributions made to a FBP. July 2, 2003 Dep't of Labor Op. Letter, 2003 WL 23374600, at *2.

*Flores* found the DOL's opinion letter unpersuasive and declined to follow the 20% threshold. 824 F.3d at 903. However, the Court failed to provide an alternative definition of "incidental," holding only that the City of San Gabriel's payments of 40% or more of its contributions to a FBP were clearly not incidental. *Id.* The lack of any clear standard for "incidental" has resulted in an abundance of post-*Flores* litigation across the Ninth Circuit.

Here, the evidence developed in the Related Cases is that during the relevant time period the City's cash-in-lieu ratios were in excess of 30%, though disagreement existed as to the extent to which they exceeded 30% because of the structure of the City's FBP. *See* Memorandum of Points and Authorities at 14, submitted with Joint Motion For Approval Of Settlement in the Related Cases and attached as Exhibit 4 to the Declaration

of Will Aitchison. Because of the lack of clarity as to the threshold for an "incidental" amount of cash-in-lieu, a dispute remains over whether the City's FBP is *bona fide*.

### 2.    *CTO Claim*

Plaintiffs' CTO claim contends that by not properly including FBP payments when it cashed out Plaintiffs for accrued but unused CTO, the City failed to comply with 29 U.S.C. § 207(o), which requires that cash payments for CTO must be made at the regular rate of pay. Plaintiffs' CTO claim is thus derivative of its FBP claim and carries with it the same *bona fide* dispute as to the extent of the City's liability.

### 3.    *Liquidated Damages*

The third *bona fide* dispute between the parties concerns the ability of Plaintiffs to recover liquidated damages. Liquidated damages in an amount equivalent to back wages are available under the FLSA unless the employer proves that its conduct was reasonable and in good faith. *See* 29 U.S.C. § 216(b). While Plaintiffs believe they would be entitled to liquidated damages, the City has advanced the following arguments opposing the award of liquidated damages.

- That *Flores* was, in the words of the Ninth Circuit, a "close question," and the Court's decision was the first in the country to the same effect from a circuit court. *Flores*, 824 F.3d at 898.

- That prior to *Flores*, the City had no knowledge to any potential FLSA violation caused by the workings of its FBP, and that after the decision, it acted in good faith to implement changes in the City's FBP and payroll practices to voluntarily comply with *Flores* before this action and the Related Cases were filed.

- That the work of reconfiguring its FBP and payroll systems required substantial reprogramming of the City's computer systems.

The City's contentions thus raise a *bona fide* issue on the matter of liquidated damages.

### 4.    *Statute of Limitations*

3:19-cv-00622-AJB-MDD

1    The usual FLSA statute of limitations is two years; however, if a plaintiff can

2    prove that the employer's violation is "willful," a three-year statute applies. *See* 29

3    U.S.C. § 255(a). To establish willfulness, a plaintiff must prove that "the employer either

4    knew or showed reckless disregard for the matter of whether its conduct was prohibited

5    by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

6        Plaintiffs' claim to the three-year statute of limitations would involve the same sort

7    of *bona fide* disputes that would be raised in the context of liquidated damages, with the

8    not insignificant difference that where the burden of proof on liquidated damages would

9    rest with the City, Plaintiffs would bear the burden of proving willfulness.

10                5.    *Methodology for Calculating Damages*

11       Finally, underpinning all of the above-described bona fide disputes, and certainly

12   the most significant variable impacting damages, is the parties' dispute over the proper

13   methodology to calculate the regular rate of pay. It is helpful to think of the FLSA's

14   regular rate calculation as a fraction. The numerator of the fraction is "all remuneration

15   for employment," subject to several specific exceptions. *See* 29 U.S.C. § 207(a)(e). The

16   denominator or "divisor" in the fraction is the employee's hours worked for the work

17   week or the Section 207(k) work period.

18       Plaintiffs have taken the position that the proper divisor is the number of regularly-

19   scheduled hours worked by employees. Considerable support exists for that proposition.

20   In a series of cases, the Supreme Court has stated that "the regular rate refers to the

21   hourly rate actually paid the employee for the normal, non-overtime workweek for which

22   he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424

23   (1945); *see 149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 204 (1947); *Walling v.

24   Helmerich & Payne, Inc.*, 323 U.S. 37, 40 (1944). There is a logic to this position, as to

25   allow the divisor to exceed regularly-scheduled hours worked would produce the

26   anomalous result that the overtime rate would decrease with each additional hour worked.

27   *See Scott v. City of New York*, 592 F. Supp. 2d 475, 488 (S.D.N.Y. 2008).

28

3:19-cv-00622-AJB-MDD

The City counters that two circuit courts of appeal have held that "the divisor in the regular rate calculation is comprised of all hours worked." *Smiley v. E.I. Dupont De Nemours and Co.*, 839 F.3d 325, 331 (3d Cir. 2016). *See Chavez v. City of Albuquerque*, 630 F.3d 1300, 1312 (10th Cir. 2011). The City also cites the district court's decision on remand in *Flores*, where the Court adopted the approach advocated by the City here. *See Flores v. City of San Gabriel*, No. LACV 12-4884 JGB (JCGx) (C.D. Cal. Nov. 5, 2018) (Doc. No. 128) ("Flores III"). Unhelpfully, the DOL has regulations seemingly taking both sides of the issue.

The second disputed issue as to the calculation of overtime has been labeled the "multiplier" question. If, for example, including the City's FBP contribution would produce the equivalent of $1.00 per hour, should that amount be multiplied by 1.5 (as Plaintiffs argue) or by 0.5 (as the City argues)? Most of the same authorities cited by both parties on the "divisor" issue split the same way on the "multiplier" question. For example, Plaintiffs contend the Supreme Court's decisions upon which they rely clearly indicate that once all remuneration for employment is collected into the regular rate of pay, the result must be multiplied by 1.5. The City relies on other authorities, including *Chavez* and *Flores III*, for its position that a .5 multiplier is proper.

Whatever the ultimate merits of the parties' arguments on the proper method of calculating the regular rate of pay, there is no doubt that their dispute on the issue is *bona fide*.[2]

### B.      The settlement is reasonable.

Given the presence of five significant *bona fide* disputes between the parties, Plaintiffs will now turn to an application of the "fairness" factors described in *Selk*.

---

[2] The "cycle time" claim is the only one of Plaintiffs' five claims not included in the damage calculations. The "cycle time" claim focused on the fact that firefighter schedules are not identical to the 28-day work period the City established under Section 207(k) of the FLSA, and asserted that the City was not properly counting all regularly-scheduled hours worked. Upon examining the City's payroll records, and after consultation with Plaintiffs' damages expert, Plaintiffs' counsel determined that the City, in fact, was counting all hours worked. Aitchison Decl., at 9-10, ¶49.

1       *1. Plaintiff's range of possible recovery*

2           The first of the *Selk* criteria asks whether the settlement amount bears "some

3 reasonable relationship to the true settlement value of the claims." *Selk*, 159 F. Supp. 3d

4 at 1174. That inquiry is aided in this case by the parties' examination of the complete

5 payroll data and modeling of potential damages.

6           As stated above, for purposes of settlement, the parties calculated damages by

7 assuming the City would be found liable on all disputed issues, except for the multiplier

8 and divisor issue explained above. If the City were to prevail at trial on its position that a

9 multiplier of .5 and divisor of total hours worked are proper in calculating the regular rate

10 of pay for FBP remunerations, Plaintiffs would be awarded $1,669,062. Aitchison Decl.,

11 at 9, ¶46. If Plaintiffs prevailed on their proposed methodology of a 1.5 multiplier and

12 divisor of the regularly scheduled workweek or work period, the City would be liable for

13 $11,216,946. *Id.* The settlement amount of $3,400,000 represents approximately double

14 the recovery for Plaintiffs applying the City's methodology theory, which was approved

15 by the district court in *Flores*. This amount is within the range of reasonableness for wage

16 and hour actions. *See Selk*, 159 F. Supp. 3d at 1175 (approves settlement representing 26-

17 50% of maximum recovery); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256

18 (N.D. Cal. 2015) (finding a wage and hour class settlement fair where the settlement fund

19 represented between 9% and 27% of the total potential recovery); *Jones v. Agilysys, Inc.*,

20 No. C 12–03516 SBA, 2014 WL 2090034 (N.D. Cal. May 19, 2014) (finding a FLSA

21 settlement that constituted between 30% to 60% of recoverable damages to be a "tangible

22 monetary benefit" for the class members); *Alleyne v. Time Moving & Storage Inc.*, 264

23 F.R.D. 41, 57–58 (E.D.N.Y. 2010) (settlement fund within range of reasonableness when

24 it represented approximately 13% to 17% of the maximum possible recovery); *Knight v.*

25 *Red Door Salons, Inc.*, No. 08–01520 SC, 2009 WL 248367, *5 (N.D. Cal. Feb. 2, 2009)

26 (recovery of 50% of possible damages in a wage and hour action was "substantial

27 achievement on behalf of the class").

28

Notably, the settlement in the Related Cases also was approximately twice the damages calculated under the City's theories. Kreis, 2020 WL 3606613, at *4. By way of comparison, the settlement approved by this Court in the Related Cases provided a total of $6,199,997.98 to be divided among 2,537 plaintiffs, for an average recovery of $2,443.83 per plaintiff. *Kreis*, 2020 WL 3606613 at *1. In reaching the settlement in this case, the parties replicated the compromise reached in the Related Cases, using the same formulas. Aitchison Decl., at 9, ¶46. Because of differences in the amount of overtime worked, FPB contributions levels, leave taken, and other compensation, the $3,400,000 settlement in this matter produces an average recovery of $4,822.69 per Plaintiff. Because of the differences in the compensation and other pay, FPB, and compensation factors, the $3,400,000 settlement in this case provides, on average, a higher per capita damages recovery to Plaintiffs here, as compared to the Related Cases.

## 2. Stage of proceedings and amount of discovery completed

A district court assesses the stage of proceedings and the amount of discovery completed to ensure that the parties have an adequate appreciation of the merits of the case before reaching a settlement. *Selk*, 159 F. Supp. 3d at 1177. Due to significant cooperation between the parties, the parties did not engage in formal discovery. Instead, the City provided Plaintiffs with the complete payroll data for all Plaintiffs during the periods covered by this lawsuit. Aitchison Decl., at 7-8, ¶36. The payroll data contained information on each Plaintiff's daily hours worked, all forms of compensation, whether the Plaintiff was treated by the City on a work week or Section 207(k) work period basis, the City's FBP contribution, and the amount of cash-in-lieu paid to each Plaintiff. *Id*. The City also provided initial explanations of the more than 100 pay codes used in its electronic payroll system, and when Plaintiffs had questions about the use and operation of the pay codes, promptly answered those questions. *Id.*, at 7, ¶¶34-35.

Plaintiffs retained Dr. Murray Simpson of DCI Consulting as an expert payroll and damages witness. *Id.*, at 6, ¶24. Dr. Simpson has extensive experience consulting on FLSA litigation, including in large scale cases with numerous plaintiffs. *Id.*, at 6, ¶25; *see*

*Valladon v. City of Oakland*, No. C 06-07478 SI, 2009 WL 3401263, at *3 (N.D. Cal. Oct. 20, 2009) (560 plaintiffs); *Scott v. City of New York*, 592 F. Supp. 2d 475, 478 (S.D.N.Y. 2008) (over 15,000 plaintiffs). Plaintiffs' counsel Will Aitchison, who first encountered Dr. Simpson as a consultant for opposing parties, has since retained Dr. Simpson to assist with several FLSA cases. *Id.*, at 6, ¶24.

The City retained Nicholas Briscoe as an expert payroll and damages witness. Mr. Briscoe served as the City's expert in the Related Cases and has extensive experience consulting on FLSA cases. *See* Declaration of Nicholas Briscoe, at 2, ¶1-2, originally submitted with Joint Motion For Approval Of Settlement in the Related Cases, attached as Exhibit 1 to the Declaration of Will Aitchison.

The two experts and the lead counsel for the City and Plaintiffs – Alison Adema and Will Aitchison – then participated in a series of lengthy phone conversations to review the City's electronic payroll information and Mr. Briscoe's calculation of damages. *Id.*, at 8, ¶39. In time, the parties agreed upon an approach where Mr. Briscoe would calculate damages based upon both the City's and Plaintiffs' theories of the case, with Dr. Simpson checking the calculations to ensure their accuracy. *Id.*, at 8, ¶40. Using this approach, the City and Plaintiffs determined the damages that would result from six different models that incorporated, to greater or lesser extent, the parties' theories of the case. *Id.*, at 8,9, ¶¶40, 45.

Once agreement had been reached as to the $3,400,000 settlement amount, the parties followed the same cooperative approach to determine the allocation of the settlement proceeds. Mr. Briscoe developed, and Dr. Simpson verified, Plaintiff-By-Plaintiff damages based upon the work-period-by-work-period or work-week-by-work week FLSA overtime for each Plaintiff. *Id.*, at 9, ¶45. As only $3,150,000 of the settlement amount represents back pay and liquidated damages (the remaining $250,000 is the City's payments towards Plaintiffs' attorney fees and costs), the parties allocated the settlement proceeds based upon the percentage of total damages held by each Plaintiff multiplied by $3,150,000. *Id.*, at 9, ¶48. This approach directly compensates Plaintiffs

3:19-cv-00622-AJB-MDD

based upon their actual FLSA overtime hours worked and their individual FBP participation.

The parties' cooperative exchange of information produced both the majority and the most important of the information that would have been sought in formal discovery, but without the costs, court intervention, and contention that occasionally characterizes the discovery process.

### 3. Seriousness of the litigation risks faced by the parties

Settlement is favored where "there is significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Selk*, 159 F. Supp. 3d at 1175. As explained in detail above, the *bona fide* disputes present in this case, particularly over the methodology used to calculate damages, present a litigation risk to Plaintiffs of recovering significantly less at trial than through the settlement.

### 4. Scope of any release provision in the Settlement Agreement.

Releases in FLSA cases should generally be limited only to FLSA claims. *Id.*, at 1178. Here, the release only applies to "FLSA claims related to unpaid overtime." Aitchison Decl., Ex. 2, at 2.

### 5. Experience and views of counsel and the opinion of participating plaintiffs.

As this Court noted in the Related Cases, "in determining whether a settlement is fair and reasonable, '[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experiences with cases.'" *Kries et al. v. City of San Diego*, 2020 WL 3606613, at *7 (*quoting Larsen v. Trader Joe's Co.*, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014)). Plaintiffs' counsel have years of FLSA and litigation experience.

Will Aitchison is a partner in the Public Safety Labor Group, a Portland, Oregon law firm. Mr. Aitchison has 42 years' experience as a lawyer, with extensive experience in handling FLSA lawsuits representing tens of thousands of employees around the country. Aitchison Decl., at 2-3, ¶¶3, 6, 10-12. Mr. Aitchison is the author of the book

3:19-cv-00622-AJB-MDD

*The FLSA – A User's Manual*, now in its fifth edition, writes a monthly newsletter that features articles on the FLSA, and has dedicated portions of his regular podcast to regular rate calculations. *Id.*, at 3-5, ¶¶13-18. Mr. Aitchison has taught the FLSA to thousands of management and labor representatives and has performed many audits of employer payroll practices testing for FLSA compliance. *Id.*, at 4-5, ¶¶15-18. Some of the FLSA cases handled by Mr. Aitchison include *Smith v. City and County of Honolulu* (FLSA lawsuit with 2,200 plaintiffs filed in the District of Hawai'i), *Tamahkera v. Tarrant County* (FLSA lawsuit with 900 plaintiffs filed in the Northern District of Texas), *Becerra v. City of Omaha* (FLSA lawsuit with 800 plaintiffs filed in the District of Nebraska), *Scott v. City of New York* (FLSA lawsuit with over 15,000 plaintiffs filed in the Southern District of New York), *Ferguson v. County of Los Angeles* (FLSA lawsuit with over 6,000 plaintiffs filed in the Central District of California), as well as dozens of other FLSA collective actions in various jurisdictions around the country. Aitchison Decl. at 3, ¶10.

James Cunningham is the principal attorney at Law Offices of James J. Cunningham. Cunningham Decl. at 2, ¶5. Mr. Cunningham's 33-year practice has involved representation of public safety employees in labor and employment matters, including significant litigation experience. *Id.*, at 2, ¶6. Among Mr. Cunningham's clients is the San Diego Firefighters Association, the labor organization representing the City's firefighters. *Id.*, at 2, ¶8.

Michael Napier is the managing attorney at Napier, Coury & Baillie, a law firm specializing in the representation of public employees. Napier Decl., at 2, ¶5. Mr. Napier has 50 years of experience representing public employee unions and public employees in litigation enforcing their statutory and contractual rights, including in FLSA collective actions. *Id.*, at 2, ¶¶5-6.

Counsel for Plaintiffs support the settlement and believe it is a fair and reasonable resolution of disputed claims. Aitchison Decl. at 9, ¶49; Cunningham Decl. at 6, ¶35.

3:19-cv-00622-AJB-MDD

Napier Decl. at 5, ¶26. A settlement committee made up of Plaintiffs, as well as the three named Plaintiffs themselves, support the settlement. Cunningham Decl. at 4, ¶23.

### 6. *Possibility of fraud or collusion*

The last of the *Selk* factors calls for courts to guard against the possibility of fraud or of collusion between the parties. *Selk* emphasized that, "A key factor supporting this finding is that the amount of the individual settlement payments to be received by opt-in members is based on an analysis of employee time records and an estimate of the degree of under-compensation during the relevant time period. . . . This approach guards against the arbitrariness that might suggest collusion." *Selk*, 159 F. Supp. 3d at 1179.

Here, as in the Related Cases and in *Selk*, the settlement payments Plaintiffs will receive were calculated on a Plaintiff-by-Plaintiff basis, taking into account each Plaintiff's compensation, work hours, FLSA overtime, and FBP participation. Additionally, there is also no evidence that the parties or their counsel colluded or pursued their own self-interests in reaching settlement. The settlement negotiations were at all times adversarial and agreement was reached only after both parties compromised on certain positions. The settlement conference was presided over by Magistrate Judge Bernard J. Skomal.

### C. **The attorney fees are reasonable.**

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180. Courts have awarded attorney fees in FLSA cases both on a common fund and a lodestar basis. Courts must award appropriate compensation to ensure that competent counsel take on cases protecting important public rights which may not otherwise be financially lucrative. *See City of Burlington v. Dague*, 505 U.S. 557, 568 (1992); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1164 (C.D. Cal. 2010).

Here, Plaintiffs' counsel twice reduced the contingent fee called for by the attorney-client agreements signed by all Plaintiffs. The original contingent fee was on a sliding scale, ranging from 33% of the gross sum recovered to 50% if recovery occurred during or

through an appeal process. Aitchison Decl. at 10, ¶59. Subsequent to the closure of the period in which individuals could opt-into this action, and as it became clear that the City had reached a tentative settlement in the Related Cases, Plaintiffs' counsel announced to Plaintiffs that they were reducing the contingent fee percentage to 25% of the gross sum recovered. Aitchison Decl. at 11, ¶62.

In the Settlement Agreement, Plaintiffs' Counsel agreed that they would further reduce the contingency fee by an additional $127,500, leaving the final contingent fee to be paid by Plaintiffs at 13.89%. Under the Settlement Agreement, the contingent fee will be paid out of each Plaintiff's share of liquidated damages. Taken together with the $250,000 in fees paid by the City under the Settlement Agreement, the total fees Plaintiffs will pay are $722,500, or 21.2% of the $3,400,000 total recovery.

For the following reasons, this Court should approve of the fee structure called for by the Settlement Agreement.

First, each plaintiff individually agreed to the attorney-client agreement. While the ultimate authority over attorney fee awards in FLSA cases rests with this Court, and while the attorney-client agreements Plaintiffs signed in anticipation of litigation are not binding, they are an important factor for consideration.

Second, the nature of contingent fee litigation brings significant risks for attorneys, both in terms of the litigation undertaken and in terms of the litigation that attorneys are precluded from handling because they accept the contingent engagement. Law firms take contingency cases if the risk of no recovery is offset by the likelihood of significant recovery over and above their regular rate for hourly work. At times, the employer prevails and neither plaintiffs nor their counsel receive anything, despite significant time and financial commitments. In this case, for example, Plaintiffs' counsel retained expert services that were anticipated, based on past experience, to exceed $100,000. Aitchison Decl., at 6, ¶26. When counsel agrees to represent employees in large-scale FLSA litigation, it often comes at the price of having to forego other opportunities. Here,

Plaintiffs' lead counsel declined to handle at least three other engagements because of the potential time demands of this litigation. *Id.*, at 10, ¶56.

Third, at the time Plaintiffs' counsel undertook this litigation, the course of the litigation was anything but certain. While *Flores* made clear that the City would have liability, the defenses the City was likely to raise – the *bona fide* disputes described above – could have a substantial impact on damages. *Id*., at 7, ¶30. Moreover, the City's firefighters had not been included as potential plaintiffs in any of the Related Cases, and most were subject to the FLSA's Section 207(k) work period rules, placing their potential recovery at a significant disadvantage that for employees on the FLSA's 40-hour work week. *Id.*, at 7, ¶29. In addition, from what Plaintiffs' counsel could determine, at the time this case was filed the City was aggressively defending the Related Cases, having opposed the sort of motion for conditional certification that is routinely granted in FLSA cases and firmly adhering to its theories with respect to damage calculations. *Id.*, at 7, ¶30.

Fourth, the result obtained in the settlement is a positive one for Plaintiffs. The achievement of exceptional results is an appropriate consideration in determining the appropriateness of a fee award. *Vizcaino*, 290 F.3d at 1048-50.

Fifth, courts consider the skill and experience of counsel in making FLSA fee awards. As discussed above, Plaintiffs' counsel have significant experience in handling FLSA actions, a background that made the handling of this case both efficient and productive.

Finally, courts in the Ninth Circuit have on many occasions approved contingent fees far higher than those described in the Settlement Agreement, even in cases in which the amount of the lodestar was considerably less. For example, a series of FLSA cases have approved of 33% contingent fees. *See e.g.*, *Del Gallego Demapan v. Zeng's Am. Corp.*, No. 18-CV-00010, 2019 WL 1120019, at *3 (D. N. Mar. I. Mar. 11, 2019) (33% contingent fee 2.3 times lodestar); *McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 2:12-CV-03035-MCE-AC, 2018 WL 3474472, at *2 (E.D. Cal. July 19, 2018); *Barbosa*

*v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (litigated under California wage-and-hour law, and collecting nine Eastern District cases where contingent fees of 30% or greater approved); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *10 (E.D. Cal. Oct. 31, 2012); *Donkerbrook v. Title Guar. Escrow Servs., Inc.*, No. CIV. 10-00616 LEK, 2011 WL 3649539, at *2 (D. Haw. Aug. 18, 2011) (stresses value of counsel's efficient resolution of case); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (42%); *Almodova v. City & Cty. of Honolulu*, No. CV 07-00378 DAE-LEK, 2010 WL 1372298 (D. Haw. Mar. 31, 2010), report and recommendation adopted, No. CIV.0700378-DAE-LEK, 2010 WL 1644971 (D. Haw. Apr. 20, 2010).

In the Ninth Circuit, when a settlement produces a common fund for the benefit of the entire class, the district court has discretion to choose either the percentage-of-the-fund, generally a 25% benchmark, or the lodestar method for awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002). Courts in the Ninth Circuit have approved of FLSA settlements containing contingent fees between 25% and 33%. *See e.g., Adams v. City & Cty. of Honolulu*, *No. CV 12-00667 BMK,* 2017 WL 2938195, at *3 (D. Haw. July 10, 2017) (28.1%); *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV-1662 OWW MJS, 2011 WL 2648879, at *10 (E.D. Cal. June 30, 2011) (30%, decided under California wage-and-hour law); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (30%); *Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF SHX, 2008 WL 5281665, at *12 (C.D. Cal. Dec. 15, 2008) (26.5% of common fund in FLSA case).

In the event the Court wishes to perform a "lodestar check" on the remaining contingent fees, what follows is a summary of the time, rates, and experience of the attorneys working on this matter. The hours recorded do not reflect the time that will

3:19-cv-00622-AJB-MDD

necessarily be worked in the settlement approval process or in the process of administering the settlement:

| Attorney | Firm | Experience | Status | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| Aitchison, Will | PSLG[3] | 42 years | Partner | 186.35 | $750 | $139,762 |
| Bacon, Cassidy | NCB | 6 years | Associate | 95.4 | $350 | $33,390 |
| Cunningham, Jim | C&M | 33 years | Partner | 139.5 | $500 | $69,750 |
| Lufkin, Ryan | PSLG | 14 years | Associate | 57.45 | $350 | $20,107 |
| Napier, Mike | NCB | 50 years | Partner | 62.75 | $600 | $37,650 |
| Salamony, Jaclyn | C&M | 1.5 | Assistant | 221.4 | $150 | $33,210 |
| **Total** | | | | | | $333,870 |

*See* Aitchison Decl., at 10, ¶50, Ex. 2; Cunningham Decl., at 5, ¶28, Ex. 6; Napier Decl., at 3, ¶15, Ex. 1. Additional time will be spent by counsel completing this motion process, administering the settlement, and answering questions from Plaintiffs. Aitchison Decl., at 11, ¶65. Between them, the three firms advanced $19,853 in litigation costs, most of which expended on Plaintiffs' expert. *See* Aitchison Decl., at 10, ¶¶50-52, Ex. 2 ($17,829); Cunningham Decl., at 5, ¶25 ($1,749); Ex. 6; Napier Decl., at 3, ¶15, Ex. 1 ($275).

District courts in the Ninth Circuit have repeatedly approved of multipliers in FLSA cases. *See Del Gallego Demapan v. Zeng's Am. Corp.*, supra, 2019 WL 1120019, at *3 (D. N. Mar. I. Mar. 11, 2019) (33% contingent fee equivalent to 2.3 times lodestar); *Avila v. Cold Spring Granite Company*, No. 116CV001533AWISKO, 2018 WL 400315, at *12–13 (E.D. Cal., Jan. 12, 2018) (awarding multiplier of 2.5 in FLSA case); *Vega v. Weatherford U.S., Limited Partnership*, No. 1:14-CV-01790-JLT, 2016 WL 7116731, at *17, fn. 2 (E.D. Cal., Dec. 7, 2016) (approving multiplier of 3.97 in FLSA case, "which is within the range typically awarded in this Circuit. *See Vizcaino*, 290 F.3d at 1051"); *Morgret v. Applus Technologies, Inc.*, No. 1:13-CV-01801- JLT,

---

[3] PSLG refers to the Public Safety Labor Group, C&M to Cunningham & McClean, and NCB to Napier Coury Baillie.

2015 WL 3466389, at *17 (E.D. Cal., June 1, 2015) (granting multiplier of 3.9); *Browne v. American Honda Motor Co., Inc.*, No. CV 09-06750 MMM DTBX, 2010 WL 9499073, at *11–12 (C.D. Cal., Oct. 5, 2010) (granting multiplier of 1.5 while approving fee award of $2,000,000); *Murillo v. Pacific Gas & Elec. Co.*, No. 2:08-1974 WBS GGH, 2010 WL 2889728, at *11–12 (E.D. Cal., July 21, 2010) (approving multiplier of 1.5 in FLSA case in part because "[t]his case contained multiple novel legal issues, including whether a payment of cash in lieu of health benefits needs to be included in the calculation of overtime under the FLSA").

For these reasons, the attorneys' fees requested under the settlement are reasonable and should be approved by this Court.

## VII.  CONCLUSION

Looking at the totality of circumstances, the *Selk* factors support a finding that the settlement constitutes a fair and reasonable resolution of a bona fide dispute over FLSA provisions. Accordingly, this Court should approve the settlement as presented above.

Dated: November 9, 2020

Respectfully submitted,
**Law Offices of James J. Cunningham**

James J. Cunningham
10405 San Diego Mission Road, Ste. 200
San Diego, California 92108
*Attorney for Plaintiffs*

24