MICHAEL A. CONGER, ESQ.
(SBN 147882)
LAW OFFICES of MICHAEL A. CONGER
16236 San Dieguito Road, Suite 4-14
P.O. Box 9374
Rancho Santa Fe, CA 92067
Telephone: (858) 759-0200
Facsimile: (858) 759-1906

Attorney for Plaintiffs DAVID K.
KRIES, GARY MONDESIR and
Those Similarly Situated

ELI NADURIS-WEISSMAN
(SBN 254788)
HANNAH WEINSTEIN
(SBN 301666)
ROTHNER, SEGALL &
GREENSTONE
510 South Marengo Avenue
Pasadena, CA 92201-3115
Telephone: (626) 796-7555
Facsimile: (626) 577-0124

Attorneys for Plaintiffs ALBERTO
ARELLANO, et al. and Those
Similarly Situated

ANN M. SMITH, ESQ. (SBN 120733)
DYLAND GRIFFITH, ESQ.
(SBN 316951)
SMITH STEINER VANDERPOOL, APC
401 West A Street, Suite 340
San Diego, CA 92101
Telephone: (619) 756-7007
Facsimile: (619) 501-8194

Attorneys for Plaintiffs CANDACE
MITCHELL, et al., and Those Similarly
Situated

MARA W. ELLIOTT, City Attorney
GEORGE F. SCHAEFER,
Assistant City Attorney
ALISON P. ADEMA, Deputy City
Attorney (SBN 149285)
DANA C. FAIRCHILD, Deputy
City Attorney (SBN 256656)
Office of the City Attorney
1200 Third Avenue, Suite 1100
San Diego, CA 92101-4100
Telephone: (619) 533-5800
Facsimile: (619) 533-5856

Attorneys for Defendant, CITY OF
SAN DIEGO

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DAVID K. KRIES, and GARY
MONDESIR, on behalf of themselves
and all others similarly situated,

       Plaintiffs,

       v.

CITY OF SAN DIEGO, and DOES 1
through 10, inclusive,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 17cv1464 GPC-BGS

**JOINT MOTION FOR
APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS
AND AUTHORITIES**

Judge: Hon. Gonzalo P. Curiel
Magistrate: Hon. Bernard G. Skomal
Courtroom: 5A (5th Fl. – Schwartz)

First Complaint Filed: July 19, 2017

Case Nos.: 17cv1464-GPC-BGS;
17cv02014-GPC-BGS; 18-cv0229-GPC-BGS

| | | |
|---|---|---|
| 1 | | |
| 2 | CANDACE MITCHELL, et al., | Case No. 17-cv-2014-GPC-BGS |
| 3 | on behalf of themselves and all other employees similarly situated, | (Consolidated with 17-cv-1464-GPC-BGS) |
| 4 | Plaintiffs, | |
| 5 | v. | |
| 6 | CITY OF SAN DIEGO, | |
| 7 | Defendant, | |
| 8 | | |
| 9 | | Case No. 18-cv-0229-GPC-BGS |
| 10 | ALBERTO ARELLANO, et al, on behalf of themselves and all other | (Consolidated with 17-cv-2014-GPC-BGS) |
| 11 | employees similarly situated, | |
| 12 | Plaintiffs, | |
| 13 | v. | |
| 14 | CITY OF SAN DIEGO, | |
| 15 | | |
| 16 | Defendant. | |

1

# TABLE OF CONTENTS

2

**Page**

3
**MEMORANDUM OF POINTS AND AUTHORITIES**..........................................1

4
    **I.**    **INTRODUCTION** .........................................................................1

5

6
    **II.**   **PROCEDURAL BACKGROUND** .............................................2

7
    **III.**  **PLAINTIFFS' CLAIMS** ...............................................................4

8
    **IV.**  **LEGAL STANDARDS** .................................................................5

9
    **V.**   **ARGUMENT** ................................................................................6

10
          **A.**   **There Is No Possibility of Fraud or Collusion**......................7

11

12
          **B.**   **The Stage of the Proceedings and Amount of Discovery Completed** .....................................................................9

13

14
          **C.**   **The Scope of the Release To Be Signed Is Narrowly Tailored** ...................................................................10

15
          **D.**   **Seriousness of Litigation Risks** ........................................11

16
               **1. The Parties' Bona Fide Disputes** ......................13

17

18
                    **a.**   **Cash-In-Lieu (CIL) vs. Total Flex Dollar Value (Total FBP)** .....................................13

19

20
                    **b.**   **CTO Claim** ...............................................14

21
                    **c.**   **Liquidated Damages** .................................15

22
                    **d.**   **Statute of Limitations**................................17

23
                **2. Settlement Terms** .................................................20

24
           **E.**   **Plaintiffs' Range of Possible Recovery Includes A Greater Or Lesser Amount For Each Plaintiff**.....................................22

25

26
          **F.**   **The Experience and Views of Counsel** ...................................24

27
**CONCLUSION**.........................................................................................25

28

Case Nos.: 17cv1464-GPC-BGS;
17cv02014-GPC-BGS; 18-cv0229-GPC-BGS

# TABLE OF AUTHORITIES

Cases                                                                                          Page

*Ballaris v. Wacker Siltronic Corp.,* 370 F.3d 901(9th Cir.2004) .............................. 5

*Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245 (N.D. Cal. 2015) ................ 10

*Callahan v. City of Sanger*, No. 14-cv-600-BAM, 2015 WL 2455419

    (E.D. Cal. May 22, 2015).................................................................. 15, 16

*Chavez v. City of Albuquerque*, 630 F.3d 1300 (10th Cir. 2011) ........................... 18

*Delpin Aponte v. United States* (Fed. Cl. 2014) 116 Fed.Cl. 5, 13,

    *aff'd* (Fed. Cir. 2015) 620 Fed.Appx. 960 ............................................ 18

*Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016) ........................... *passim*

*Flores v. City of San Gabriel,* 969 F.Supp.2d 1158 (C.D. Cal. 2013).................... 15

*Flores v. City of San Gabriel*, No. CV 12-04884-JDB (JCGx),

    2013 WL 5817507 (C.D. Cal. Oct. 29, 2013)....................................... 15

*Flores v. City of San Gabriel*, No. LACV 12-4884 JGB (JCGx)

    (C.D. Cal. Nov. 5, 2018) ............................................................. 11, 18, 19

*Frank v. McQuigg*, 950 F.2d 590 (9th Cir. 1991).............................................. 17, 18

*Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM,

    2013 WL 1193485 (E.D. Cal. Mar. 22, 2013) ........................................ 5

*Larsen v. Trader Joe's Co.*, 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) ............ 23

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)........................... 8

*Local 246 Util. Workers Union of Am. v. S. California Edison Co.*,

    83 F.3d 292, 297 (9th Cir. 1996)................................................... 14

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)........ 5, 11

*Moreno v. Regions Bank*, 729 F.Supp.2d 1346 (M.D. Fla. 2010) ........................... 9

*Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324 (N.D. Cal. 2014) ........................... 11

*Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014).................................. 8

*Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164

    (S.D. Cal. 2016)............................................................... 5, 6, 7, 11

Case Nos.: 17cv1464-GPC-BGS;
17cv02014-GPC-BGS; 18-cv0229-GPC-BGS

*Slezak v. City of Palo Alto*, No. 16-CV03224-LHK, 2017 WL 2688224,

  (N.D. Cal. June 22, 2017) ...................................................................... 6, 9

*Smiley v. E.I. Dupont De Nemours and Co.*, 839 F.3d 325 (3d Cir. 2016) ............. 18

*Thompson v. Costco Wholesale Corp.*, No. 14-CV-2778-CAB-WVG,

  2017 WL 697895 (S.D. Cal. Feb. 22, 2017) ........................................................ 5

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945) ................ 17

**Statutes**

29 C.F.R. § 778.215 ........................................................................................ 12

29 C.F.R. § 778.110 .................................................................................. 17, 18

29 U.S.C. § 201 ................................................................................................ 3

29 U.S.C. § 207 .............................................................................................. 12

29 U.S.C. § 216 ................................................................................. 7, 14, 16

29 U.S.C. § 255 .............................................................................................. 16

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs in the above-captioned consolidated cases, *Kries, et al. v. City of San Diego*, *Mitchell, et al. v. City of San Diego*, and *Arellano, et al. v City of San Diego* (collectively, "the Actions") and Defendant City of San Diego ("Defendant" or "City") (collectively "the Parties") respectfully move this Court to approve their Settlement Agreement and Release ("Settlement Agreement") and dismiss these cases with prejudice.

The Actions are collective actions brought under the Fair Labor Standards Act by current and former City employees who seek unpaid overtime wages based on *Flores v. City of San Gabriel*, 824 F.3d 890, 895 (9th Cir. 2016), review denied [*Flores*]. As discussed more fully below, the Parties' Settlement Agreement resolves several bona fide disputes between the Parties and provides for fair and reasonable individualized compensation to each named and opt-in Plaintiff based on (1) the allegations set forth in the complaints; (2) the pertinent statutory and case law; (3) the information produced during discovery; and (4) each Plaintiff's actual payroll records during the claims period.

The Settlement Agreement, which has been approved by all named Plaintiffs and the City Council, is submitted to this Court as Exhibit 1 to the Declaration of Alison P. Adema in support of the Joint Motion for Approval of Settlement. ("Adema Decl."). The Settlement Agreement includes Exhibit A, *Kries* Final Settlement By Employee 2-17-2020; Exhibit B, *Mitchell* Final Settlement By Employee 2-17-2020; Exhibit C, *Arellano* Final Settlement By Employee 2-17-2020; Exhibit D, Acknowledgement and Release of Claims, which each plaintiff will be required to sign to receive the agreed-upon settlement amount, and Exhibit E, Notice of Collective Action Settlement, which per the agreement of counsel will be mailed to all Plaintiffs with  a copy of Exhibit D, subject to Court approval of the settlement. (Adema Decl., ¶ 4, Exh. 1, Exhs. A – E.) On April 9, 2020, the City Council approved

1

Resolution Number R-312916 approving the settlement of the Actions, subject to the Court's approval. (Adema Decl., ¶ 5, Exh. 2.)

The individual Declarations of Plaintiffs' Counsel Michael Conger ("Conger Decl."), Ann M. Smith ("Smith Decl."), Dyland Griffith ("Griffith Decl."), Eli Naduris-Weissman ("Naduris-Weissman Decl.") and Hannah Weinstein ("Weinstein Decl."), one Joint Declaration signed by all Plaintiffs' Counsel ("Joint Decl."), and the Declaration of Nicholas Briscoe ("Briscoe Decl."), the City's forensic expert, are also submitted in support of this Joint Motion.

## II.  PROCEDURAL BACKGROUND

On July 19, 2017, David K. Kries and Gary Mondesir, filed the *Kries* action on behalf of themselves and similarly situated former and current police officers employed by the City. (Kries ECF No. 1.)  After the Court denied the City's motion to dismiss the complaint, the City answered on August 1, 2018. (Kries ECF No. 145.) The *Kries* plaintiffs amended their Complaint on October 23, 2018, to add a second claim for relief related to the bona fide status of the City's Flexible Benefits Plan. (Kries ECF No. 161.)

On September 29, 2017, Candace Mitchell and 39 other individuals filed the *Mitchell* action on behalf of themselves and all similarly situated former and current full-time City employees in the job classifications listed in Groups A, B and C in Addendum A to Personnel Manual Index Code H-4.  (Mitchell ECF No. 1.)  After the Court denied the City's motion to dismiss the complaint, the City answered on May 25, 2018.  (Mitchell ECF No. 815.)

On January 31, 2018, Alberto Arellano, Maico Alejo, and Gary Ollison filed the *Arellano* action on behalf of themselves and similarly situated former and current City employees holding maintenance, labor, skilled trades and equipment operator positions, which include some of the job classifications listed in Groups A, B, and C in Addendum A to City's Personnel Manual Index Code H-4. (Arellano ECF No. 1.) The City answered the complaint on March 26, 2018. (Arellano ECF No. 144.)

On August 6, 2018, over the City's opposition, the Court granted the *Mitchell* plaintiffs' motion for conditional certification and request for court-ordered notice of the opportunity to join the case to be provided to all putative plaintiffs in Groups A, B and C of Personnel Manual Index Code H-4 as defined by the *Mitchell* Complaint. (Mitchell ECF No. 839.)  The Court's order included the grant of a five-month tolling period based on the motion filing date of March 2, 2018.  (Mitchell ECF No. 839.)

On August 21, 2018, the Court approved the joint motion of the City and plaintiffs in the *Mitchell* and *Arellano* cases to consolidate the two actions and disseminate the court-approved "Notice of Pendency of Overtime Lawsuits" ("Notice") inviting all putative plaintiffs in Groups A, B and C, who had not already done so, to join either the *Mitchell* or *Arellano* actions. (Mitchell ECF No. 847.)  On September 6, 2018, the Court approved the parties' amended Notice. (Mitchell ECF No. 852.) On September 11, 2018, the approved "Notice of Pendency of Overtime Lawsuits" was mailed to 4,303, former and current employees. (Adema Decl., ¶ 6.)

On November 8, 2018, the Court granted the parties joint motion for conditional certification and approval of notice to all putative police officer plaintiffs in the *Kries* case. (Kries ECF No. 167.) On November 28, 2018 the approved notice was mailed to 2021 police officers. (Adema Decl., ¶ 7.)

The Parties agree that a total of 2,537 Plaintiffs filed timely consents to join the Actions: 1,153 joined the *Mitchell* case; 897 joined the *Arellano* case; and 487 joined the *Kries* case. (Adema Decl., ¶ 8.)[1]

---

[1] Over the last two weeks, an issue has arisen in the Mitchell case that will not affect the Settlement Agreement for which the parties seek Court approval. However, the issue is likely to result in the City and Mitchell plaintiffs seeking the Court's approval of settlements with up to 35 additional putative plaintiffs employed in lifeguard job classifications within the time period the Parties have requested this Court maintain continuing jurisdiction over the Actions and before the determination of Plaintiffs' counsels' fee motions. (Adema Decl., ¶¶ 9,10.)

3

## III.  PLAINTIFFS' CLAIMS

The City is a charter city and municipal corporation. During all or some of the times relevant to this case, Plaintiffs were non-exempt City employees entitled to overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiffs allege violations of the FLSA and seek unpaid overtime compensation, declaratory relief, liquidated damages, interest, and attorneys' fees and costs based on the Ninth Circuit's *Flores* decision. (*See generally* Kries ECF Nos. 1 and 161, Mitchell ECF No.1, and Arellano ECF No.1.)

*Flores* decided two issues of first impression arising from defendant City of San Gabriel's flexible benefits plan ("FBP"), which provided employees with flexible benefit dollars (also commonly referred to as "flex dollars" or "flex credits") to purchase benefits.  Employees who waived health insurance or did not spend the whole of their allocated flex dollars on other insurance options, received the unused portion as cash, sometimes referred to as "cash-in-lieu" ("CIL") payments.  *Flores* held that an employer's cash-in-lieu payments to employees must be included in the calculation of the regular rate of pay for overtime payments under the FLSA.  *Flores*, 824 F.3d at 901-902.

In addition to this holding, *Flores* held that San Gabriel's FBP was not "bona fide" under the FLSA because the percentage of total cash-in-lieu versus insurance payouts under the plan was not incidental; this meant that the total value of the flex benefit dollars provided by the plan, even if used to purchase health or other insurance benefits and not taken as cash, became eligible for inclusion in the regular rate of pay when calculating FLSA-eligible overtime.  *Id.* at 903.

Plaintiffs' complaints allege the City miscalculated their overtime wages under the FLSA by excluding cash-in-lieu payouts under the City's FBP from the regular rate of pay. ("CIL claim"). Moreover, Plaintiffs allege that the City's FBP lost its bona fide status for one or more fiscal years during the claims period based on cash payout ratios, resulting in the underpayment of overtime when the full value of

4

Plaintiffs' FBP flex dollars or credits was excluded from the regular rate of pay ("Total FBP claim"). Finally, Plaintiffs allege that when they accrued compensatory time off under the FLSA and then cashed out this accrued time, the City miscalculated these payments by excluding FBP-related amounts as alleged in their CIL and Total FBP claims ("CTO claim"). [2]

## IV.   LEGAL STANDARDS

Settlement of collective action claims under the FLSA requires court approval. *Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) [*Selk*]. The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Thompson v. Costco Wholesale Corp.*, No. 14-CV-2778-CAB-WVG, 2017 WL 697895, at *6 (S.D. Cal. Feb. 22, 2017). However, district courts in the Ninth Circuit normally apply the standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk* at 1172 (applying *Lynn's Food Stores* to motion for approval of FLSA collective action settlement). "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk* at 1172 (internal quotation marks and citation omitted). Once it is established that there is a bona fide dispute, courts often apply the Federal Rules of Civil Procedure Rule 23 class action factors when evaluating the fairness of an FLSA settlement, while also recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Selk* at 1172-1173; *see also, Khanna v. Inter-Con Sec. Sys., Inc.*,

---

[2] Although the City alleges that Plaintiffs' CTO claim was not specifically pled in the Actions, (*see generally* Kries ECF No. 1, Mitchell ECF No.1, Arellano ECF No.1), a CTO claim was identified in the first joint discovery plan filed in the *Mitchell* case; CTO claims were also itemized in the list of pending issues the *Mitchell* and *Arellano* Parties exchanged in September 2018; and the City acknowledges that a timely amendment to each Complaint could have been made if necessary. Therefore, the Parties have agreed to include these CTO claims in their Settlement Agreement. (Adema Decl., p.6, fn. 1; Joint Decl., ¶¶ 10,11(c).)

No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). Moreover, "it is also the case that FLSA collective actions do not implicate the same due process concerns as class actions brought under Rule 23 because an employee who wishes to join a FLSA collective action must affirmatively 'opt-in' by filing a written consent to join the suit before she can be bound by the outcome." *Selk* at 1173, n.3 (citing *Ballaris v. Wacker Siltronic Corp.,* 370 F.3d 901, 906 n. 9 (9th Cir.2004)).

To determine whether a settlement is fair, adequate and reasonable, courts in this circuit look to the totality of the circumstances, balancing such factors as: "(1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Selk* at 1173. A court will not approve a settlement of an action in which parties attempt to settle for less than the FLSA-guaranteed amount because it would shield employers from the full cost of complying with the statute. *Id.* at 1172. Courts evaluate the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto,* No. 16-CV03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017). "In considering these factors under a totality of the circumstances approach, a district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Selk* at 1173. If the Court determines that the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation.

## V. **ARGUMENT**

When applying the relevant factors to the Settlement here, based on its terms and the declarations of all counsel, this Court should find that the proposed settlement agreement is a fair and reasonable resolution of the parties' bona fide disputes in

furtherance of the purposes of the Act and, on this basis, approve it.

### A. There Is No Possibility of Fraud or Collusion

All counsel representing Plaintiffs and the City are experienced practitioners as documented in their declarations filed in support of this Joint Motion. Collectively, all counsel for Plaintiffs have been advocates for employees in general and for City of San Diego employees in particular for decades; all have been involved in prior adversarial proceedings with the City on behalf of employees. The Deputy City Attorneys representing the City's interests likewise have experience advocating for employers, including the City, in matters of this type.

In recognition of the high costs of litigation and also in an effort to foster positive employment relations, the Parties have engaged in arms-length negotiations regarding settlement and resolution of these Actions, which included two in-person settlement conferences conducted with Magistrate Bernard Skomal in December 2018 and again in May 2019, as well as numerous telephonic conferences with Magistrate Skomal directed at settlement and countless in-person and telephone conferences among the Parties' counsel. (Adema Decl., ¶ 11; Joint Decl., ¶¶ 4,8(c).)

Moreover, the Parties' Settlement does not involve a lump sum of money to be divided on an arbitrary basis by all plaintiffs. Instead, actual time records and payroll data have been used by City's outside forensic expert Nick Briscoe who has calculated each Plaintiff's individual damages based on the agreed-upon terms of the settlement. The amount to be recovered is determined using the same settlement formula applied to each Plaintiff. The size of each recovery depends upon how much FLSA-eligible overtime each plaintiff worked (not all City-paid overtime is FLSA-eligible); the amount of total FBP credits the Plaintiff had available (the annual FBP amount varies among job classifications); and the Plaintiff's opt-in date; and the effect of permissible offsets and credits lawfully available to the City. (Briscoe Decl., ¶¶ 3 – 8, 15.) This objective approach "guards against the arbitrariness that might suggest collusion." *Selk,* 159 F. Supp. 3d at 1179.

Based on Mr. Briscoe's calculation of damages individually for each Plaintiff, there are some Plaintiffs who will have zero recovery. This is because they did not have FLSA overtime hours within the analysis periods under the FLSA or because the City paid them additional overtime premium under labor agreements and personnel regulations in excess of the additional overtime pay calculated under the FLSA within each workweek applicable. (Briscoe Decl., ¶ 15.)[3] Plaintiffs with zero recoveries include two original *Mitchell* named-plaintiffs who have signed-off on this Settlement with knowledge of this outcome. (Griffith Decl., ¶ 12.) Others will have negligible recoveries; still others will recover thousands of dollars, including the largest single recovery of $48,915.34 by *Kries* Plaintiff Gary Mondesir. Each Plaintiff has had or will have the opportunity to review and discuss with counsel these actual payroll records and the expert damage calculations related to them. (Conger Decl., ¶¶ 7-16, Griffith Decl., ¶¶ 3-12, Naduris-Weissman Decl., ¶ 2; Smith Decl., ¶ 16; Weinstein Decl., ¶¶ 2-4.) This objective approach "guards against the arbitrariness that might suggest collusion." *Selk*, 159 F. Supp. 3d at 1179.

Furthermore, in an FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F.Supp.3d at 1180. Here, the Parties have agreed that reasonable attorneys' fees and costs will be determined by the Court by a noticed motion. Fees and costs awarded will be in addition to the agreed-upon settlement total and no deduction will be made from any Plaintiff's damages to cover any portion of the attorney' fees or costs incurred in this Action. Exhibit 1, p.8, §4. By leaving the amount of fees to be decided by separate

---

[3] Under the FLSA, 29 U.S.C. § 207(h)(2), an employer may credit overtime payments already made to employees against overtime payments owed to them under the FLSA. *Haro v. City of Los Angeles,* 745 F.3d 1249, 1259 (9th Cir. 2014), citing 29 U.S.C. § 207(h)(2) ("[e]xtra compensation ... shall be creditable toward overtime compensation payable pursuant to this section.") Credits and offsets to an employer' FLSA overtime obligation must be applied on a workweek-by-workweek basis. *Haro,* at 1259.

motion after the settlement is approved, Plaintiffs are assured that the parties arrived at a fair and reasonable resolution of all bona fide disputes affecting each Plaintiff's damages without any "competing" considerations related to the amount of fees to be paid.

Finally, approval of the settlement by the 45 named Plaintiffs in the Actions further supports a finding that counsel did not collude, or otherwise allow self-interest to infect the settlement negotiations. (Joint Decl., ¶ 7.) Accordingly, this factor weighs in favor of approval of the Parties' Settlement.

**B.      The Stage of the Proceedings and Amount of Discovery Completed**

Courts assess the stage of the proceedings and the amount of discovery completed to ensure that parties have an adequate appreciation of the merits of the case before reaching a settlement. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution."). As long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the Parties have made an informed decision to settle based on sufficient information. The Actions have been pending for more than two years and have been intensely litigated. In the course of the Actions the Parties have had innumerable exchanges on the legal and factual disputes; they have engaged in informal and formal discovery regarding Plaintiffs' claims, including but not limited to:

- the City responded to Plaintiffs' written discovery;
- Plaintiffs deposed the City's persons most knowledgeable;
- the City produced FBP data to show how and in what amounts FBP credits under the City's plan were allocated to cash, other forms of cash-in-lieu, and to insurance options;
- the City produced actual payroll and time records for all Plaintiffs to its retained forensic economist expert for his determination of damages according to the Parties' disputed legal theories and after offsets and credits permitted under the FLSA were applied in the City's favor.

(Adema Decl., ¶ 12; Briscoe Decl., ¶ 5; Joint Decl., ¶ 8.)

9

Further, Plaintiffs' counsel joined the City's counsel in conferring on several occasions with the City's retained expert in order to question him regarding his methods, work product and calculations and to request changes and corrections as necessary to arrive at a set of calculations which all Parties believe in good faith represent a correct determination of each Plaintiff's potential damages. (Adema Decl., ¶ 13; *see also* Ex. 1, Recitals, ¶13; Joint Decl., ¶ 8(c).) As their declarations in support of this Joint Motion show, all counsel are in an informed position to assess the strengths and weaknesses of their case and evaluate the likelihood of prevailing on each disputed issue of fact or law. On this basis, this factor weighs in favor of this Court's approval of the Parties' Settlement.

## C.     The Scope of the Release To Be Signed Is Narrowly Tailored

"A release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5. Requiring an expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1351 (M.D. Fla. 2010) ["An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."].

The release that will bind all Plaintiffs in the Actions is specific to FLSA claims related to FBP remuneration, as follows:

> I understand and agree that my acceptance of the Agreement
> constitutes a full and complete settlement of all my FLSA
> claims related to the treatment of FBP remuneration, whether
> asserted or un-asserted, through the date of Court approval of
> the Settlement Agreement in this case, and that this settlement
> includes all claims made in the Action for unpaid overtime
> based on the regular rate of pay, the payment of compensatory
> time off at the regular rate of pay, the methodology the City
> used to calculate FLSA overtime pay on FBP credits,
> liquidated damages, and interest, and I fully, finally and
> completely release, waive, and discharge the City of San
> Diego, and its elected and administrative officers, agents,

10

employees, successors and assigns from FLSA claims related
to the treatment of FBP remuneration, whether asserted or un-
asserted, through the date of Court approval of the Settlement
Agreement.

(Exh. 1, ¶ 5.)

In addition to the release set forth in the Settlement Agreement, parallel release language will be distributed to all Plaintiffs in the form of an Acknowledgment and Acceptance of Settlement and Release of Claims Form ("Release"), attached as Exhibit D to the Settlement Agreement. (*See* Ex. 1, Exh. D.) The release language in the Settlement Agreement itself tracks this shorter form Release and both are tailored to the specific claims at issue in this lawsuit. (*Id.*)  Plaintiffs are only releasing their FLSA overtime claims related to the treatment of FBP remuneration through the date of Court approval of this Settlement Agreement and they are specifically advised of their "right to pursue any FLSA claims related to the treatment of FBP remuneration that [Plaintiff] might have based on events occurring or payments made after the date of Court approval of the Settlement Agreement." (*Id.*) To receive payment under the Settlement, Plaintiffs will be required to execute and return Exhibit D. (Exh. 1, ¶ 3.) Although all Plaintiffs will have the opportunity to review the complete Settlement Agreement, the Release at Exhibit D is a shorter, less complex document that summarizes the claims in the Actions, advises each Plaintiff of the overtime backpay and liquidated damages which will be payable to them under the settlement and the tax treatment of these payments. (*See* Exh.1, Exh. D.)

Plaintiffs' counsel are fully satisfied that the agree-upon Release is narrowly tailored to bind all Plaintiffs only as to their specific FLSA claims related to FBP remuneration, whether asserted or unasserted. (Joint Decl., ¶ 9.) The fact that the Parties have agreed on a narrowly-tailored release favors approval of the Parties' settlement.

**D.    Seriousness of Litigation Risks**

11

Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). As discussed in greater detail below, the Settlement Agreement provides Plaintiffs with substantial relief while continued litigation could harm Plaintiffs' interests by jeopardizing the relief which will be secured by settlement. If a settlement in an FLSA lawsuit reflects a reasonable compromise over issues that are actually in dispute, the "court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Selk*, 159 F.Supp.3d at 1173; *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food Stores*, 679 F.2d at 1353 n.8 (requiring "settlement of a bona fide dispute between the Parties with respect to coverage or amount due under the [FLSA]").

As discussed below, a number of variables could impact the calculation of damages in this case because of the bona fide disputes which would remain for summary adjudication or trial. In particular, the largest settlement variable is the methodology or divisor to be used when calculating damages. The City vigorously disputes Plaintiffs' approach and relies on the district court's decision in *Flores*, which decided this precise legal issue in favor of the City on remand from the Ninth Circuit's decision on liability. *See Flores v. City of San Gabriel*, No. LACV 12-4884 JGB (JCGx) (C.D. Cal. Nov. 5, 2018) (Doc. No. 128).

While Plaintiffs assert that they have a meritorious rebuttal to the City's argument on each of the disputed issues, including the methodology dispute, the fact remains that real and substantial litigation risks weigh in favor of the settlement reached which provides each Plaintiff with the full, unreduced value of his or her claim assuming Plaintiffs prevail on all disputed issues except methodology, and adds a substantial enhancement to each Plaintiff's settlement in compromise of the methodology dispute.

As explained below, the Parties believe that the proposed Settlement

12

1  Agreement achieves a fair and reasonable resolution of the five bona fide disputes

2  which persist in the Actions and that the settlement terms achieve the overall effect

3  of vindicating rather than frustrating the purposes of the FLSA and are fully

4  consistent with other approved settlements arising from the *Flores* precedent.

5              **1.    The Parties' Bona Fide Disputes**

6        Although the City agreed based on *Flores* that it owed some retroactive

7  underpaid overtime to plaintiffs related to their flexible benefits plan (FBP)

8  compensation, the City disputed (1) whether it had underpaid FLSA overtime by

9  excluding the cash-in-lieu portion of its FBP only or by excluding the full or total

10 FBP amount; (2) whether it had underpaid compensatory time off (CTO) by

11 excluding FBP compensation when calculating permissible cash-outs; (3) whether it

12 should pay liquidated damages in addition to actual wage damages; (4) what claims

13 period should apply (the minimum 2-year statute of limitations or 3 years based on

14 willfulness); and (4) what methodology should be applied to calculate the amount of

15 any underpayment (i.e., using a divisor of total-hours-worked in a 7-day workweek

16 or a divisor of 40-hours based on a standard, non-overtime workweek). (Adema

17 Decl., ¶ 14; Joint Decl., ¶ 10.)

18              **a.    Cash-In-Lieu (CIL) vs. Total Flex Dollar Value (Total FBP)**

19       *Flores* held that an employer *must include* the payment of cash-in-lieu (CIL)

20 of health benefits in the calculation of the regular rate of pay for overtime payments

21 under the FLSA, and that the employer *may be required to include* the entire FBP

22 dollar value (Total FBP), including insurance payouts, if the plan loses its bona fide

23 status in any plan year. *Flores,* 824 F.3d at 900.

24       The FLSA excludes from the regular rate of pay "contributions irrevocably

25 made by an employer to a trustee or third person pursuant to a bona fide plan for

26 providing old-age, retirement, life, accident, or health insurance or similar benefits

27 for employees." 29 U.S.C. § 207(e)(4). The statute itself does not define the term

28 "bona fide plan." Thus, *Flores* construed subsection (a)(5) of 29 C.F.R. § 778.215,

13

the Department of Labor's interpretation of the term "bona fide." *Flores*, at 902. Subsection (a)(5) of the regulation generally provides that a benefits plan may qualify as "bona fide" even though an "incidental" part of the employer's plan contributions is paid directly to an employee in cash. *See* 29 § 778.215 (a)(5).

*Flores* found that where, as in the City of San Gabriel's case, 40% or more of an employer's total contributions to a cafeteria benefits plan was paid directly to employees as cash, the plan was not "bona fide," because such a ratio was not an "incidental" part of the city's FBP plan. *See Flores*, at 903. However, *Flores* did not define where the term "incidental" begins and ends when the plan's cash ratio falls below 40%. *Flores* ultimately left employers without clear guidance on compliance with the FLSA's bona fide requirement. *Id.* Adding to the uncertainty over compliance, *Flores* found unpersuasive a Department of Labor opinion letter advising, without any explanation of its reasoning, that the threshold for "incidental" cash-in-lieu benefits was 20% or less of all contributions. *See Flores*, at 904. The Parties agree that for each of the plan years for which damages have been calculated under the Settlement Agreement, i.e., FY17, 18 and 19, the City's cash-in-lieu ratios were at least 30%. Based on the distinctions between the FBP analyzed in *Flores* and the City's FBP, the Parties disagree over the extent to which the ratio exceeded 30% in certain years.

Based on the uncertainty over the legal standards and factual distinctions between these Actions and *Flores*, a bona fide dispute exists between the Parties regarding whether a court would find the City liable on the Total FBP claim for each of the fiscal years covered by the statute of limitations or for one or all of the three fiscal years included in the Settlement Agreement.

### b. CTO Claim

The Parties also have a bona fide dispute surrounding Plaintiffs' CTO claim. Plaintiffs assert the City underpaid compensatory time off during the relevant period by not paying CTO at a regular rate that included either CIL or Total FBP credits. In

other words, the CTO claim depends on the existence and extent of City's liability on the CIL and Total FBP claims; thus, the same disputes over the CIL and Total FBP claims carry over to resolution of the CTO claim. In addition, a bona fide dispute exists regarding the extent to which Plaintiffs accrued and cashed out CTO attributable to FLSA-eligible overtime to which *Flores* applies versus contractual overtime to which it does not.

### c.   Liquidated Damages

Whether Plaintiffs would recover liquidated damages is another bona fide dispute affecting Plaintiffs' CIL, Total Flex and CTO claims. The FLSA provides that "an employer who violates the Act shall be liable for unpaid overtime compensation plus an additional equal amount as liquidated damages." 29 U.S.C. section 216(b); *Local 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996). However, liquidated damages may be avoided if the employer can establish "subjective and objective good faith in its violation of the FLSA." *Id.*

*Flores* was the first and only circuit court to analyze and decide that cash-in-lieu payments under employer-sponsored flexible benefits plans did not qualify for an exemption under the FLSA's statutory scheme when determining the regular rate of pay; *Flores* was also the first court to find that a flexible benefits plan was not bona fide such that contributions to third parties under the plan were not lawfully excluded from the regular rate of pay under the FLSA.

The City's position is that prior to the *Flores* decision in June 2016, it had no knowledge of any potential FLSA violation, and after the decision, it acted in good faith to immediately analyze the decision based on the City's FBP and payroll practices and to voluntarily comply with the decision before the Actions were filed. This included diligently undertaking the substantial work needed to re-program the City's payroll system to include CIL compensation in the regular rate of pay effective July 1, 2017.

Plaintiffs argue, on the other hand, that liquidated damages are presumed under the FLSA and that, based on deposition testimony and other written discovery, the City cannot successfully carry its burden to show both its subjective good faith belief that it was in compliance with the FLSA after due diligence to be in compliance, as well as an objective basis for such belief. Although the City points to *Flores* as a case of first impression in the matter, the *Flores* court itself upheld liquidated damages against the City of San Gabriel and a three-year statute of limitations based on a finding of willfulness. Plaintiffs argue that the District Court's decision in *Flores* in 2013 put the City on notice to examine its compliance and, further, that once the Ninth Circuit's decision was issued in June 2016, the City was out of compliance for too long and arguably acted in bad faith when it considered but decided in May 2017 not to pay underpaid overtime on a retroactive basis back to July 1, 2016.

The City counters that the decision of one district court on an issue of first impression did not reasonably put the City on notice of the need to examine whether its payment of cash-in-lieu complied with the FLSA. The City further observes that the *Flores* district court found San Gabriel not liable for liquidated damages, and that it had not willfully violated the FLSA in excluding cash-in-lieu from the regular rate. *See Flores v. City of San Gabriel,* 969 F.Supp.2d 1158, 1169–77 (C.D. Cal. 2013) ("Flores I") (applying two-year statute of limitation because no willful violation in excluding cash-in-lieu); *see also Flores v. City of San Gabriel*, No. CV 12-04884-JDB (JCGx), 2013 WL 5817507, at *1 (C.D. Cal. Oct. 29, 2013) ("Flores II") (San Gabriel not liable for liquidated damages). While the City acknowledges the Ninth Circuit reversed the district court's decision on liquidated damages, it argues that there are factual distinctions between *Flores* and the Actions which foster uncertainty over Plaintiffs' recovery of double damages. *See Callahan v. City of Sanger*, No. 14-cv-600-BAM, 2015 WL 2455419, at *13-14 (E.D. Cal. May 22, 2015) (finding that the failure to include a health benefit reimbursement amount in calculating

16

the regular rate of pay was done in good faith due to uncertainty in the law at the time).

The Parties agree that, despite the arguments on each side, Plaintiffs' recovery of liquidated damages on the CIL and related CTO claims for the full claims period remains uncertain and, in the absence of settlement, would require the parties to incur the increased costs and delays associated with a trial over disputed facts.

Plaintiffs' recovery of liquidated damages on the Total FBP claim also is uncertain for the same or similar reasons. The FLSA only awards liquidated damages based on a violation of the FLSA. *See* 29 U.S.C. section 216(b). Where liability is uncertain, liquidated damages is equally uncertain. The bona fide dispute over the City's liability on the Total FBP claim, if any, means there also is a bona fide dispute over liquidated damages. Id. Moreover, in arriving at this Settlement, Plaintiffs recognized the City's good faith effort to comply with the FLSA's bona fide plan criteria in response to *Flores* and these Actions by making a business decision to include the Total FBP in the regular rate for all employees who work FLSA-eligible overtime effective July 1, 2019.

### d. Statute of Limitations

Similar to the dispute over liquidated damages, there is a bona fide dispute over the statute of limitations that affects all of Plaintiffs' claims. Generally, the FLSA has a two-year statute of limitations. 29 U.S.C. § 255(a). However, if the violation of the FLSA is willful, the statute of limitations extends to three years. *Id*. The burden is on the plaintiffs to show a willful violation. "An employer's violation of the FLSA is 'willful' when it is 'on notice of its FLSA requirements, yet [takes] no affirmative action to assure compliance with them.' [Citations omitted.]" *Flores,* 824 F.3d at 906. The same balancing of factors explained above related to liquidated damages also applies to the Parties' dispute over the willfulness issue. *See Callahan*, *supra* at *13-14.

### e. Methodology for Calculating Damages: What Divisor?

17

Finally, underpinning all of the above-described bona fide disputes, is the Parties' dispute over the proper methodology to be used to calculate the regular rate of pay to include FBP dollars as eligible remuneration. The amount of each Plaintiff's annual FBP allotment is set before the start of each fiscal year. Plaintiffs argued that this annual allotment must be converted to a per-hour add-on value by dividing the weekly FBP allotment (annual amount divided by 52) by the standard 40-hour, non-overtime workweek and then multiplying this hourly add-on value by the premium 1.5 rate. Plaintiffs argue that this method is consistent with all other forms of add-on pay the City makes available to employees which are in addition to the base hourly rate and never diminished when overtime hours are worked. Plaintiffs also argue that the 40-hour divisor should apply because the full FBP dollar value is earned by each eligible full-time employee who works standard hours without overtime. Plaintiffs argue that this is the methodology supported by the U. S. Supreme Court in *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945), the DOL Regulations and the Ninth Circuit in *Frank v. McQuigg*, 950 F.2d 590, 595-596 (9th Cir. 1991), and that it is the methodology dictated by the City's official documents, including the City's annual FBP Resolutions which do not establish a legislative intent to pay FBP dollars for all hours worked as opposed to the hours worked during a standard, non-overtime workweek. Plaintiffs also argue that the City's methodology using total hours worked in reliance on 29 C.F.R. section 778.110(b) was expressly rejected by the *McQuigg* court because there, as here, a "total hours worked" divisor would have the effect of paying an overtime employee *less* per hour than a non-overtime employee for the same 40 hours of work. This approach reduces an employee's 40-hour earnings in order to pay overtime earnings – a result that undermines the express purposes of the FLSA as the *McQuigg* court noted.

The City vigorously opposes Plaintiffs' approach to the methodology for calculating the regular rate of pay on FBP dollars as contrary to the prevailing authority and weight of the evidence. The City has continuously maintained that, as

hourly employees, the proper method for calculating Plaintiffs' overtime pay on the lump sum payment of FBP dollars is set forth in 29 C.F.R. section 778.110(b). This method uses all hours actually worked in a 7-day workweek as the divisor in determining the "regular rate," and applies a premium multiplier (*i.e.*, .5 times) to all overtime hours actually worked. *See* 29 C.F.R. § 778.110(b); *Smiley v. E.I. Dupont De Nemours and Co.*, 839 F.3d 325, 331 (3d Cir. 2016) ["The divisor in the regular rate calculation is comprised of all hours worked." (internal quotations omitted)]; *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1312 (10th Cir. 2011) [upholding divisor of total hours worked and .5 multiplier to determine overtime pay on additional lump sum compensation to hourly workers]. Based on these same authorities, the City points out that the district court in *Flores,* when deciding cross motions on damages following the Ninth Circuit's decision on liability, ruled on the parties' methodology dispute by upholding the method the City argues here and did so on the basis of indistinguishable facts. The *Flores* district court granted defendant San Gabriel's motion and ordered that, when calculating Plaintiffs' FLSA overtime, the flex compensation at issue is to be divided by the total number of hours actually worked in a 7-day workweek to arrive at the regular rate -- consistent with 29 C.F.R. 778.110 -- and that amount multiplied by .5 to determine the overtime owed. *See Flores v. City of San Gabriel*, No. LACV 12-4884 JGB (JCGx) (C.D. Cal. Nov. 5, 2018) (Doc. No. 128).

Moreover, the City rejects Plaintiffs' reliance on *Frank v. McQuigg,* 950 F.2d 590, as misplaced. That case centered on the interpretation of a federal statute that mandated an additional amount of pay to federal employees working in Alaska as a TCOLA or "Territorial Cost of Living Adjustment." *Frank*, 950 F.2d at 592. The Court expressly limited its holding to the specific context of the TCOLA. *See id.* at 597, n.9; *see also Delpin Aponte v. United States* (Fed. Cl. 2014) 116 Fed.Cl. 5, 13, *aff'd* (Fed. Cir. 2015) 620 Fed.Appx. 960 (explaining that *Frank* applied only to the TCOLA, not add-on payments generally, in upholding the method of dividing

19

total regular compensation by actual hours worked when calculating the regular rate). In sum, the City contends that the TCOLA in *Frank* is materially distinguishable from the additional lump sum compensation recognized by the Ninth Circuit in *Flores* related to FBP credits, and that the City implemented the correct method for determining overtime on FBP-related compensation, consistent with the FLSA, its regulations, and the prevailing, well-reasoned view of the courts that have examined this issue.

In reaching this settlement, Plaintiffs recognized that, despite the arguments in their favor, the decision in *Flores v. City of San Gabriel*, No. LACV 12-4884 JGB (JCGx) (C.D. Cal. Nov. 5, 2018) (Doc. No. 128), which issued during the pendency of these Actions, generally supports the City's methodology argument despite other distinguishing features, and has improved the City's chances of success on this aspect of the Parties' bona fide disputes.

### 2. Settlement Terms

In light of the five bona fide disputes which remain and the risks associated with each, the Parties have agreed to settle the Actions for a total sum of up to $6,199,997.98 ("Total Settlement Amount"). This represents the agreed-upon amount for all overtime compensation allegedly owed to all Plaintiffs in the Actions for the alleged three-year recovery period on all claims. The Total Settlement Amount is allocated equally between back overtime wages (approximately $3.1 million) and liquidated damages (approximately $3.1 million).[4] (Exhibit 1, ¶ 1.)

On the **CIL claim**, Plaintiffs' damage calculations are based on the calculation

---

[4] The Parties have agreed that any amount remaining unclaimed after a full and fair opportunity for all plaintiffs to submit a signed Release, as described in the Settlement Agreement, will revert to the City. (Exh. 1, at ¶ 1(e).) Based on the level of communication Plaintiffs' counsel's declarations show they have had with their clients, the Parties anticipate the vast majority of Plaintiffs will sign and return their releases and that it is appropriate for whatever unclaimed funds may exist to revert to the City. Moreover, the reversion here does not indicate self-interest on the part of Plaintiffs' counsel, whose fees will not be paid from the settlement fund and will be determined by the court following noticed motions. *Cf. In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir.2011).

of alleged underpaid overtime and an equal amount of liquidated damages using a three-year statute of limitations through June 30, 2019, from each Plaintiff's opt-in date, plus the Court-ordered 5-month tolling period where applicable,[5] reduced by application of the offsets and credits available to the City under the FLSA because the City paid overtime to employees in compliance with Personnel Regulations and labor agreements which exceeded what the FLSA requires. (Briscoe Decl., ¶¶ 4, 6.) This is the full value achievable on Plaintiffs' CIL claim after reduction for City's allowable credits and offsets plus an enhancement in compromise of Plaintiffs' arguments over methodology. (Joint Decl., ¶¶ 9,10.)

On the **Total FBP claim**, Plaintiffs' damage calculations are based on the calculation of alleged underpaid overtime and an equal amount of liquidated damages using a two-year statute of limitations based on each Plaintiff's opt-in date through June 30, 2019, plus the Court-ordered 5-month tolling period where applicable, but in any event not before July 1, 2016, and these calculations cover three fiscal years: FY 2017 (July 1, 2016 through June 30, 2017), FY 2018 (July 1, 2017 through June 30, 2018), and FY 2019 (July 1, 2018 through June 30, 2019).[6] (Briscoe Decl., ¶¶ 4, 6.) This result achieves a three-year recovery on this Total FBP claim for all plaintiffs; however, Plaintiffs conceded that they were less likely to prevail on their claim that the City's FBP had lost its bona fide status for any plan year before the FY17 plan year. (Joint Decl., ¶ 12.)

---

[5] When granting the *Mitchell* plaintiffs' motion for conditional certification on August 6, 2018, the Court ordered the statute of limitations tolled during the 5-month period since the motion was filed on March 2, 2018. (Mitchell ECF No. 839.) Because this motion covered putative *Arellano* plaintiffs in Groups A, B and C, the Parties agreed to apply the same tolling for affected *Arellano* plaintiffs. Mr. Briscoe applied the tolling period established by the Court's order, if applicable, to that Plaintiff's claim. (Briscoe Decl., ¶ 6.)

[6] As explained above, on or about July 1, 2019, the City began to include in the regular rate of pay, and thus in the rate used to calculate overtime wages under the FLSA, the value of FBP credits paid by the City to trustees or third parties on behalf of employees for health or similar benefits; the Parties agree that the pending Actions were a factor in the City's decision to implement this change in payroll practices, which is applicable to *all* non-exempt City employees. (Exh. 1, Recitals at ¶ 7.)

21

The amount of each Plaintiff's damages was reduced by application of the offsets and credits available to the City under the FLSA because the City began including the CIL portion of an employee's Total FBP on July 1, 2017, and because the City paid overtime to employees in compliance with Personnel Regulations and labor agreements which exceeded what the FLSA requires.  This is the full value achievable on this claim after reduction for City's allowable credits and offsets plus an enhancement in compromise of plaintiffs' arguments over methodology. (Joint Decl., ¶¶ 8(c), 12.)

For the same periods, the City will pay back overtime pay on cash-outs of CTO and an equal amount of liquidated damages at a regular rate of pay that includes CIL and Full FBP Credits.  (Briscoe Decl., ¶ 4.) This is the full value achievable on the **CTO claim** after reduction for City's allowable credits and offsets plus an enhancement in compromise of plaintiffs' arguments over methodology. (Joint Decl., ¶ 12.)

### E.    Plaintiffs' Range of Possible Recovery Includes A Greater Or Lesser Amount For Each Plaintiff

Each Plaintiff's actual damages were calculated by City's retained forensic expert, Nicholas Briscoe, using actual payroll records exported from the City's payroll system. (Briscoe Decl., ¶ 5.) Mr. Briscoe determined all FLSA-eligible overtime hours during each 7-day workweek and applied CIL or Total FBP Credits as eligible remuneration to recalculate FLSA premium overtime earned and CTO backpay using both the City and Plaintiffs' methodology for calculating the regular rate of pay on FBP compensation. Mr. Briscoe then deducted from any underpaid amounts for that 7-day workweek the credits to which the Parties agree the City is entitled for payments made in excess of the minimums required by the FLSA. The total potential damages for each Plaintiff was based on the applicable statute of limitations for that Plaintiff.  (Briscoe Decl., ¶¶ 4, 6 - 11.) The Parties agree that the City's expert's calculations of the potential backpay damages were done accurately

as directed by the Parties. (Adema Decl., ¶ 13; Joint Decl., ¶ 8(c).)

Plaintiffs and the City's range of recovery is substantially different depending on how the Parties' bona fide disputes are resolved. If Plaintiffs prevail on their position that the City is liable for backpay on the CIL and CTO claims based on a three-year statute of limitations, but lose on the Total FBP claims, the total FLSA backpay for all 2,537 Plaintiffs based on the City's methodology is $354,933.46. (Briscoe Decl., ¶ 12.) If Plaintiffs prevail on their liquidated damages claim, Plaintiffs' damages would increase to $709,866.92. Since these potential outcomes are based on the calculation of Plaintiffs' potential recovery based on a three-year limitations period, both the backpay and liquidated damages amounts would be even less if a two-year statute applies. (*Id.*)

An alternative outcome follows if Plaintiffs prevail on their position that the City is liable for backpay on all of their claims -- CIL, Total FBP and CTO -- based on a three-year statute of limitations. The total FLSA backpay for all 2,537 Plaintiffs based on the City's methodology would be $1,634,005.90. (Briscoe Decl., ¶ 13.) If Plaintiffs further prevail on their position that the City is liable for liquidated damages on these claims, Plaintiffs damages would increase to $3,268,011.80. (*Id.*) As with the above scenario, the recovery of these amounts assumes a limitations period of three years on all claims, and, Plaintiffs would recover less if a two-year statute applies. Moreover, these recoveries assume Plaintiffs would prevail in proving the City's FBP was not bona fide for fiscal years 2017, 2018 and 2019. If the City prevails on its defenses to this claim for one or more fiscal years, Plaintiffs' recovery would be reduced proportionately by the damages attributable to the fiscal year(s) for which liability is not found. (Briscoe Decl., ¶ 13.)

The most prominent variable in assessing Plaintiffs' range of recovery is the Parties' methodology dispute, *i.e.*, whether a 40-hour or total-hours-worked divisor is used and whether a 1.5 or a .5 multiplier is then applied to the per-hour value. However, the range of recovery also is affected by the Parties' other bona fide

disputes. Under the terms of the Settlement Agreement, the City has agreed to pay a total sum of $6,199,997.98. This $6.2 million settlement represents approximately twice the maximum value of Plaintiffs' damages if the City's methodology is accepted as proper under the FLSA and controlling case law. Based on the calculations of City's outside forensic economist, a decision by the Court in favor of the City on this single issue would reduce Plaintiffs' recovery based on the terms of the settlement by 50% to approximately $3.1 million.

Taken together, the terms of the Settlement Agreement provide Plaintiffs with prompt, significant, and certain recovery, especially given the risks presented by continued litigation. Although the risks involve a decrease in the potential award for each Plaintiff rather than a verdict of no liability, the risk of a lesser recovery coming after many more months or years of litigation, including potential appeals, favors settlement. Accordingly, because the interests of the Plaintiffs are better served by settlement than the attendant risks of further litigation, this factor weighs in favor of approval of the settlement. (Joint Decl., ¶ 13; Adema Decl., ¶¶ 15-16.)

**F.     The Experience and Views of Counsel**

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014).

Here, all Plaintiffs' counsel in these three consolidated Actions assert that, in their informed judgment, the terms of the Settlement Agreement are fair, just, and reasonable because the settlement amount for each Plaintiff represents the full potential value of their claim assuming Plaintiffs prevail on all disputed issues except methodology and, as to methodology, the amount the City is adding to each Plaintiff's damage amount as a compromise of this aspect of the case is fair and reasonable. (Joint Decl., ¶ 4.) Plaintiffs' counsel together have decades of experience representing employees in wage and hour cases, including in litigating and settling

24

1 FLSA and other employment-related cases. (Joint Decl., ¶¶ 2-3; Conger Decl., ¶¶ 2-
2 6; Naduris-Weissman Decl., ¶ 3; Smith Decl., ¶¶ 2-16; Weinstein Decl., ¶ 5.) As
3 such, Plaintiffs counsels' evaluation of the case and settlement is reliable.

4 Counsel for the City also has years of experience advising employers on and
5 defending FLSA and state law wage and hour matters. (Adema Dec., ¶ 2.) Based on
6 this experience, it is the position of defense counsel that this settlement is fair and
7 reasonable and provides Plaintiffs with substantial relief. (Adema Dec., ¶ 15.)
8 Accordingly, this factor weighs in favor of approval of the settlement.

9 While counsel for Plaintiffs and the City believe their positions on the above-
10 described bona fide disputes are meritorious, they are experienced practitioners with
11 an informed and realistic outlook on the uncertainties associated with litigation.
12 From the City's perspective, it is prudent to pay more to achieve finality and
13 certainty; from the Plaintiffs' perspective, it is prudent to accept less for the same
14 reason. (Adema Decl., ¶ 17; Joint Decl., ¶¶ 1-13.)

15 **CONCLUSION**

16 Based on the foregoing, the Parties respectfully request this Court's approval
17 of the proposed Settlement Agreement.

18 Dated: April 28, 2020          SMITH STEINER VANDERPOOL, APC

20          By: /s/ Ann M. Smith
21          ANN M. SMITH
          DYLAND GRIFFITH
          Attorneys for Plaintiffs
22          CANDACE MITCHELL, et al.,
          on behalf of themselves and all
23          other employees similarly situated

24 Dated: April 28, 2020          LAW OFFICES OF MICHAEL A. CONGER

25          By: /s/ Michael A. Conger
26          MICHAEL A. CONGER
          Attorneys for Plaintiffs
27          DAVID K. KRIES and GARY
          MONDESIR, on behalf of
28          themselves and all other
          employees similarly situated

25

Case Nos.: 17cv1464-GPC-BGS;
17cv02014-GPC-BGS; 18-cv0229-GPC-BGS

Dated: <u>April 28, 2020</u>                    ROTHNER, SEGALL & GREENSTONE

By  <u>/s/ Eli Naduris-Weissman</u>
ELI NADURIS-WEISSMAN
HANNAH WEINSTEIN
Attorneys for Plaintiffs
ALBERTO ARELLANO, et al.,
on behalf of themselves and all
other employees similarly situated

Dated: <u>April 28, 2020</u>                    MARA W. ELLIOTT, City Attorney

By  <u>/s/ Alison P. Adema</u>
ALISON P. ADEMA
GEORGE F. SCHAEFER
Attorneys for Defendant,
CITY OF SAN DIEGO

**Signature Certification**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Michael A. Conger, Esq., Ann M. Smith, Esq., Dyland Griffith, Eli Naduris-Weissman and Hannah Weinstein, Esq., and that I have obtained all three counsel's authorization to affix their electronic signatures to this document.

Dated:  April 28, 2020                    MARA W. ELLIOTT, City Attorney

By  <u>/s/ Alison P. Adema</u>
Alison P. Adema
Deputy City Attorney
Attorneys for Defendant