1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ERIC KELLEY, PATRICK HESTERS, and ERIC DUNNICK, on behalf of themselves and similarly situated individuals,<br><br>                                      Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO,<br><br>                                      Defendant. | Case No.:  19-cv-622-GPC-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR APPROVAL OF SETTLEMENT; AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES**<br><br>**[ECF No. 92]** |

        Before the Court is the Motion for Settlement Approval between Plaintiffs and
Defendant City of San Diego ("Defendant" or "City") (collectively "the Parties").  ECF
No. 92.  Based on the papers and pleadings submitted in support of Plaintiffs' motion, the
remaining papers, pleadings and Orders in this action, counsel's statements during the
hearing on this matter, and for good cause shown, the Court **GRANTS** the Joint Motion
to Approve the Settlement Agreement.  The Court further **GRANTS in part** and
**DENIES in part** Plaintiffs' request for attorney's fees.

# I.   BACKGROUND

This case involves a wage-and-hour class action, wherein Plaintiffs are non-exempt City of San Diego employees of the City' Fire Department who argue that they are entitled to overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and seek unpaid overtime compensation, liquidated damages, and reasonable attorney's fees on the basis of the Ninth Circuit decision *Flores v. City of San Gabriel,* 824 F.3d 890, 895 (9th Cir. 2016).  *Flores* held that employees who did not spend the whole of their allocated flex benefit plan dollars received the unused portions as cash, sometimes referred to as "cash-in-lieu" ("CIL") payments, and that the employee's CIL payments must be included in the calculation of the regular rate of pay for overtime payments under FLSA.  *Flores*, 824 F.3d at 901–02.  *Flores* additionally held that the total value of flex benefit dollars provided by the flexible benefits plan ("FBP") became eligible for inclusion in the regular rate of pay when calculating overtime payments under FLSA because it was not a "bona fide" plan.  *Id.* at 903.

Here, Plaintiffs allege that the City (1) failed to comply with *Flores* by not including CIL payments in the regular rate of pay when calculating overtime compensation, and not including all FBP payments in the regular rate of pay because such payments were not made pursuant to a "bona fide plan"; (2) violated the FLSA through its system of using compensatory time off ("CTO") to compensate Plaintiffs for overtime hours worked because the City's cash payments for unused CTO were not paid at the FLSA's regular rate of pay; (3) failed to properly count all hours worked by firefighters due to its "Cycle Time" system; and (4) used a divisor and multiplier methodology that miscalculated the regular rate of pay.

Plaintiffs filed this action on April 2, 2019 on behalf of themselves and similarly situated former and current "Group E" employees, encompassing positions that are all within the City of San Diego Fire-Rescue Department.  ECF Nos. 1 ("Compl."), 57.

Three related cases against the City for similar claims, *Kries, et al. v. City of San Diego*, Case No. 17-cv-1464-GPC-BOS; *Mitchell et al. v. City of San Diego*, Cas No. 17-cv-2014-GPC-BGS, and *Arellano et al. v. City of San Diego*, Case No. 18-cv-0229-GPC-BOS (collectively "Related Cases"), had been previously filed with this Court but did not include the City's Fire Department employees as plaintiffs.  Because the City has claimed the partial overtime exemption in 29 U.S.C. § 207(k) for its firefighters engaged in fire suppression work, there was a significant difference in terms of the City's potential FLSA liability for Plaintiffs in this case compared to the Related cases.  ECF No. 92 at 6 (citing 29 C.F.R. § 553.230).

On June 17, 2019, the City filed its Answer.  ECF No. 22.  On July 8, 2019, Plaintiffs moved to strike several of the City's affirmative defenses.  ECF No. 27.  The Parties subsequently agreed that the City would file an amended Answer excluding certain affirmative defenses.  ECF No. 30.  On July 26, 2019, the City filed its amended Answer.  ECF No. 31.  On October 2, 2019, Plaintiffs moved for certification of a collective action.  ECF No. 41.  The Parties then stipulated to conditional certification, and on December 10, 2019 the Court conditionally certified the action and approved of distribution of notice to all current or former "Group E" City employees that they may opt-in to the case.  ECF Nos. 57, 58.  A total of 705 Plaintiffs eventually filed consents to join the action.  ECF No. 93-1 ("Adema Decl.") ¶ 5.

The Parties now move for the Court to approve the Settlement Agreement, which provides that the City will pay a total sum of $3,400,000, comprised of three elements: A payment of back overtime of $1,575,000, liquidated damages of $1,575,000, and a payment by the City of $250,000 towards Plaintiffs' attorney's fees and litigation costs.

ECF No. 93-2 ("Settlement Agreement")[1] at 5.[2]  The agreement provided that this amount shall include all of Plaintiffs' damages to settle all of Plaintiffs' claims for unpaid overtime under the FLSA.  Settlement Agreement at 9.

## II.  LEGAL STANDARD

FLSA was enacted to protect covered workers from substandard wages and oppressive working hours.  *See Barrentine v. Arkansas–Best Freight System, Inc*., 450 U.S. 728, 739 (1981); 29 U.S.C. § 202(a) (characterizing substandard wages as a labor condition that undermines "the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers").  "FLSA places strict limits on an employee's ability to waive claims for unpaid wages or overtime . . . for fear that employers may coerce employees into settlement and waiver."  *Lopez v. Nights of Cabiria, LLC,* 96 F.Supp.3d 170, 175 (S.D.N.Y.2015) (internal quotation marks and citation omitted).  Accordingly, claims for unpaid wages under FLSA may only be waived or otherwise settled if settlement is supervised by the Secretary of Labor or approved by a district court.  *See Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dept. of Labor, Emp't Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1352–53 (11th Cir.1982); *Meza v. 317 Amsterdam Corp.,* 14–CV–9007 (VSB), 2015 WL 9161791, *1 (S.D.N.Y. Dec. 14, 2015) ("Parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor.") (citation omitted).

---

[1] The City filed a response stating that a prior draft of the settlement agreement, rather than the final settlement agreement ultimately agreed to by the Parties, was uploaded along with Plaintiffs' motion for settlement approval.  ECF No. 93.  The motion itself referenced the terms of the final settlement agreement as provided by the City in its response.  At the hearing, Plaintiffs confirmed that the agreement filed by the City, ECF No. 93-3, is the final settlement agreement between the Parties.

[2] All references to page numbers for electronically filed documents reflect the CM/ECF pagination of the documents.

In reviewing a FLSA settlement, a district court must determine whether the settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355. A bona fide dispute exists when there are legitimate questions about "the existence and extent of Defendant's FLSA liability." *Ambrosino v. Home Depot. U.S.A., Inc*., 2014 WL 1671489 (S.D. Cal. Apr. 28, 2014). There must be "some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims." *Selk v. Pioneers Mem'l Healthcare Dist*., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).

After a district court is satisfied that a bona fide dispute exists, it must then determine whether the settlement is fair and reasonable. *Id.* To determine this, courts in this circuit look to the totality of the circumstances, balancing such factors as: "(l) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Id.* at 1173 (S.D. Cal. 2016) (collecting cases). "If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute." *Id.* at 1172 (S.D. Cal. 2016). The Court addresses each of these factors in turn.

## III.    DISCUSSION

### A.    Bona Fide Dispute

The Court finds that this case reflects a bona fide dispute between the parties over potential liability under the FLSA. Although *Flores* established that the City owe some amount of retroactive underpaid overtime to the Plaintiffs, the amount of such payment owed is subject to reasonable dispute. Specifically, the Parties point to five disputes: (1)

1   whether the City underpaid FLSA overtime by not including in FLSA overtime the full

2   amount of its payments to the FBP; (2) Whether the City underpaid CTO by not

3   including FBP compensation when cashing out CTO; (3) Whether the City should pay

4   liquidated damages in addition to back pay; (4) Whether the FLSA's two or three-year

5   statute of limitations should apply; and (5) What methodology should be applied to

6   calculate the amount of damages.  ECF No. 92 at 13.

7          The Court finds that there was indeed a bona fide dispute between the Parties

8   concerning these topics.  First, because *Flores* did not state with clarity the threshold for

9   when CIL payments to an FBP become more than "incidental" and thus render the FBP

10  not a "*bona fide* plan" excludable from the regular rate of pay, there was a legitimate

11  dispute about whether all of the City's FBP contributions were required to be included in

12  the regular rate of pay.  ECF No. 92 at 14; *see also Flores*, 824 F.3d at 903.  This same

13  dispute carries over to the Parties' disagreement regarding the underpayment of CTO

14  based on the City's exclusion of FBP contributions.  ECF No. 92 at 15.  As to the issue of

15  liquidated damages, there was a bona fide dispute between the Parties regarding whether

16  the City could show its conduct was reasonable and in good faith as is required to avoid

17  liability for liquidated damages under 29 U.S.C. § 216(b), with the City citing some, but

18  not definitive, evidence in support of its argument that it had acted reasonably in good

19  faith.  *Id*.  Similarly, the relevant statute of limitations, which depends on whether

20  Plaintiffs could show the City's violation was "willful," was also legitimately disputed.

21  *Id.* at 16; 29 U.S.C. § 255(a).  Lastly, regarding what the Parties describe as "the most

22  significant variable impacting damages," the methodology to be applied to calculate the

23  regular rate of pay contained two disputed components.  ECF No. 92 at 16–17.  The

24  Parties first disputed that the "divisor" in the fraction of the regular rate of pay should

25  represent the number of regularly-scheduled hours worked by employees as urged by

26  Plaintiffs, or all hours worked, as urged by the City.  *Id.*  Case law supports both

27

28

approaches, and the Parties note that the Department of Labor's regulations seemingly follow both approaches.  *Id.*   The Parties also disputed whether the "multiplier" for the regular rate of should be 1.5, as Plaintiffs argue, or 0.5 as the City argues, a question for which there is a similar split of authority as the "divisor" issue.  *Id.*

These disputes raise legitimate question over the extent to which the City is liable under FLSA.  The Parties have both shown legitimate arguments deserving consideration and in light of these competing views, the Court finds that there is a bona fide dispute between the Parties.

### B.    Fair and Reasonable

The Parties contend that the proposed Settlement Agreement is a fair and reasonable resolution of the parties' disputes and in furtherance of the purposes of the FLSA.  After considering the six factors outlined above, the Court finds that the Settlement Agreement is fair and reasonable under FLSA.

### 1.    Plaintiff's Range of Possible Recovery

In comparing the amount proposed in the settlement with the amount that plaintiffs could have obtained at trial, the court must be satisfied that the amount left on the settlement table is fair and reasonable under the circumstances presented.  *Selk*, 159 F. Supp. 3d at 1174.   The Court must consider whether the range of potential recovery bears some reasonable relationship to the true settlement value of the claims.  *Id.*  "[A] proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Here, the range of Plaintiffs' potential recovery varies widely depending on how the bona fide disputes between the Parties are resolved.  ECF No. 92 at 18.  The Parties each retained experienced damages experts to assist in the calculation of damages for each individual plaintiff.  *Id.* at 10.  Assuming the City would be found liable on all

disputed issues,[3] if the City were to prevail on its position regarding methodology, Plaintiffs would be awarded $1,669,062.  ECF No. 92-2 ("Aitchison Decl.") ¶ 46.  If Plaintiffs were to prevail on their position regarding methodology, Plaintiffs would be awarded $11,216,946.  *Id.*  The settlement amount of $3,400,000 thus represents slightly over 30% of the maximum recovery possible, and approximately double the amount recoverable were the City's methodology approach to prevail.[4]  The Parties note that the settlement agreement approved by this Court in the Related Cases was also approximately twice the damages calculated under the City's theories, though the per-plaintiff recovery under this proposed settlement is slightly higher than in the Related Cases.  ECF No. 92 at 19; *see Kries v. City of San Diego*, No. 17-CV-1464-GPC-BGS, 2020 WL 3606613, at *4 (S.D. Cal. July 2, 2020).

The Court agrees that the amount set forth in the settlement agreement bears a reasonable relationship to the true settlement value of the claims.  Other courts have approved settlements accounting for a similar percentage of the total possible recovery.  *Cf. Selk*, 159 F. Supp. 3d at 1175 (approving settlement fund representing between 26% and 50% of best possible recovery); *Monterrubio v. Best Buy Stores*, L.P., 291 F.R.D. 443, 454 (E.D. Cal. 2013) (approving of settlement under Rule 23 of representing between 30% and 57% of maximum recovery, based on each party's calculation).  Given that there are several bona fide disputes in this case, a number of variables could lead to Plaintiffs to recover significantly less than the proposed settlement amount should the

---

[3] The Parties did not include the "cycle time" claim in their damages calculation, as Plaintiffs ultimately concluded that the City was in fact counting all hours worked after examining the City's payroll records and consulting with their expert.  ECF No. 92 at 17 n.2.

[4] As noted, the lower estimate also assumes Plaintiffs would prevail on the other disputed issues, meaning it presumes the City's FBP was not a *bona fide* plan and FBP payments were required to be included in the regular rate of pay, a three-year statute of limitations would apply, and the City would be liable for liquidated damages.  *See* ECF No. 92 at 10–11.  Accordingly, if the City were to prevail on any of these issues, Plaintiffs' potential recovery would be reduced.

8

case proceed to trial.  Accordingly, taking into account the uncertainty of recovery and the estimates provided by the City's expert, the Court finds that the proposed settlement amount is appropriately within the range of possible recovery by Plaintiffs.

## 2.  Stage of Proceedings and Amount of Discovery Completed

The Court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement.  *Selk*, 159 F.Supp.3d at 1177 (citing *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D.Cal. 2014)).  The Parties state that although they did not engage in formal discovery, the City provided Plaintiffs with payroll data for all Plaintiffs and explanations of the more than 100 pay codes used in its electronic systems, allowing Plaintiffs and their damages expert to review the relevant data.  Aitchison Decl. ¶¶ 34–36. The Parties agreed that the City's expert would calculate the damages based on both the City's and Plaintiffs' theories, and the Plaintiffs' expert would check the accuracy of those calculations.  *Id.* ¶¶ 38–48.  The Parties also engaged in a series of lengthy phone conversations to review the City's payroll data and the calculations.  *Id.* ¶ 39.  The Parties state that their "cooperative exchange of information produced both the majority and the most important of the information that would have been sought in formal discovery." ECF No. 92 at 21.

Based on the foregoing, the Court finds that the parties have engaged in meaningful informal discovery that has permitted the Parties to calculate Plaintiffs' potential recovery based on the most relevant variables to the case.  Accordingly, this factor favors approval of the Settlement Agreement.  *Ching v. Siemens Industry, Inc.,* No. 11–cv–04838–MEJ, 2014 WL 2926210, *5 (N.D. Cal. Jun. 27, 2014) (extent of discovery weighed in favor of approving a settlement where class counsel "conducted interviews, propounded extensive written discovery, discussed the case with opposing counsel, analyzed thousands of pages of documents, deposed Defendants' person most

knowledgeable, analyzed damages, reviewed time and pay records and policy documents, and collected evidence").

### 3. Seriousness of Litigation Risk

The Court finds that the seriousness of the litigation risks also weighs in favor of approval of the Settlement Agreement.  Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 255 (N.D. Cal. 2015).  If a settlement in an FLSA lawsuit reflects a reasonable compromise over issues that are actually in dispute, the "court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'"  *Selk,* 159 F.Supp.3d at 1173; *Nen Thio v. Genji, LLC,* 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food Stores,* 679 F.2d at 1353 n.8 (requiring "settlement of a bona fide dispute between the Parties with respect to coverage or amount due under the [FLSA]").

As the Parties note, there are a number of bona fide disputes in the case that represent litigation risks for the Plaintiffs.  The resolution of even one such dispute, the methodology issue, in the City's favor would result in a recovery equal to less than half of the proposed settlement amount.  Aitchison Decl. ¶ 46.  In light of the above-referenced uncertainty, the Court find that the parties would face substantial litigation risk were this action to continue.  Further, "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Glass v. UBS Fin. Servs., Inc*., No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009).  Accordingly, this factor supports approval of the Settlement Agreement.

### 4. Scope of Release Provision in the Settlement Agreement

Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to

the litigation, and are especially skeptical of release provisions that require employees to forfeit claims that are designed to advance public values. *Selk*, 159 F.Supp.3d at 1178 (citing *Luo v. Zynga, Inc.*, No. 13–cv–00186 NC, 2014 WL 457742 at *3 (N.D. Cal. Jan. 31, 2014)). The underlying concern is that an overly wide-reaching release of claims may evince an attempt by an employer to use employee wages as a bargaining chip to extract valuable concessions from the employees. *Id.* A FLSA settlement – especially when members opt in in order to receive only unpaid wages and related damages – should generally be limited to the specific claims at issue in the lawsuit. *Id.* Here, the applicable release provision in the Settlement Agreement provides:

> Upon final approval by the Court of the AGREEMENT, PLAINTIFFS agree to fully discharge any and all claims, charges, grievances, complaints, allegations, and causes of action related to or arising out of the allegations made in THE ACTION for unpaid overtime under the FLSA, whether asserted or unasserted, through the date the Court approves the AGREEMENT, and that this settlement includes all claims made in THEE ACTION for unpaid overtime based on the regular rate of pay, the payments of compensatory time off at the regular rate of pay, the methodology or formula the City used to calculate FLSA overtime pay, the CITY's use of "cycle time," liquidated damages, interest, and attorney's fees and costs ("RELEASED CLAIMS"), and PLAINTIFFS fully, finally, and completely release, waive, and discharge CITY, and its elected and administrative officers, agents, employees, successors, and assigns from FLSA claims related to the RELEASED CLAIMS, whether asserted or unasserted, through the date the Court approves this AGREEMENT.

> Plaintiffs acknowledge and understand that PLAINTIFFS have the right to pursue any FLSA claims that PLAINTIFFS might have based on events occurring or payments made after the date the COURT approves this AGREEMENT.

Settlement Agreement at 9. The above language will be distributed to all Plaintiffs as an Acknowledgment and Acceptance of Settlement and Release of Claims Form which contains the following parallel release language:

> I understand and agree that my acceptance of the Agreement constitutes a full and complete settlement of all my FLSA claims related to unpaid overtime, whether asserted or unasserted, through the date of Court approval of the Settlement

19-cv-622-GPC-BGS

1
2
3
4
5
6
7
8
9
10

Agreement in this case, and that this settlement includes all claims made in the Action for unpaid overtime based on the regular rate of pay, the payment of compensatory time off at the regular rate of pay, the methodology or formula the City used to calculate FLSA overtime pay, the CITY'S use of "cycle time," liquidated damages, attorney fees, and costs of litigation ("RELEASE CLAIMS"), and I fully, finally and completely release, waive, and discharge the City of San Diego, and its elected and administrative officers, agents, employees, successors and assigns from the RELEASED CLAIMS, whether asserted or unasserted, through the date of Court approval of the Settlement Agreement. I understand that I have the right to pursue any FLSA claims based on events occurring or payments made after the date of Court approval of the Settlement Agreement. I further agree to dismiss, with prejudice, my claims in the Action. I understand and acknowledge that the City expressly denies liability for ay and all claims or demands and that the Agreement reflects a compromise settlement of disputed claims.

11
12
13

Settlement Agreement at 37. To receive payment under the Settlement, Plaintiffs will be required to execute and return the Acknowledgment and Acceptance of Settlement and Release of Claims Form. *Id.* at 11.

14
15
16
17
18
19
20
21
22

The release form provides that Plaintiffs are only releasing their FLSA overtime claims through the date of Court approval of this Settlement Agreement and they are specifically advised of their "right to pursue any FLSA claims based on events occurring or payments made after the date of Court approval of the Settlement Agreement." Settlement Agreement at 37. As approved of in *Selk*, the settlement agreement provides only for the release of FLSA claims arising from the underpayment of overtime at dispute in this litigation. *See Selk*, 159 F.Supp.3d at 1175. The Court finds that the scope of the release provision in the Settlement Agreement is narrowly-tailored and meets the applicable standards under the FLSA, weighing in favor of approval of the settlement.

23

**5. Experience and Views of Counsel and Participating Plaintiffs**

24
25
26

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given ·considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, 2014

27
28

1    WL 3404531, *5 (N.D. Cal. Jul. 11, 2014).  Courts have also taken into account the

2    objection or lack thereof of participating plaintiffs.  *See Selk*, 159 F. Supp. at 1176–77.

3        Plaintiffs' counsel each have decades of experience in labor and employment

4    matters.  Attorney Will Aitchison has extensive experience handling FLSA collective

5    actions, performed many audits of employer payroll practices for FLSA compliance, and

6    has authored a book and presented at seminars on the subject.  Aitchison Decl. ¶¶ 3–5,

7    10–12, 15–18.  Attorney James Cunningham has years of experience representing public

8    safety employees and represents the San Diego Firefighters Association, the labor

9    organization representing the City's firefighters.  ECF No. 92-7 ("Cunningham Decl.") ¶¶

10   5, 6, 8.  Attorney Michael Napier has 50 years of experience representing public

11   employee unions and public employees in litigation, including FLSA cases.  ECF No. 92-

12   1 ("Napier Decl.") ¶¶ 5–6.  Counsel for Plaintiffs believe the settlement is a fair and

13   reasonable resolution of the disputed claims.  Aitchison Decl. ¶ 49; Cunningham Decl. ¶

14   35; Napier Decl. ¶ 26.  Lead Counsel for the City, Alison Adema, also has decades of

15   experience litigating labor and employment matters, including representing employers in

16   FLSA actions.  ECF No. 93-1 ("Adema Decl.") ¶ 3.  Attorney Adema agrees that the

17   Settlement Agreement fairly and justly resolves the bona fide disputes between the

18   parties.  *Id.* ¶ 5.

19       The Court finds that the opinions of the Parties' counsel should be given

20   considerable weight both because of counsel's familiarity with this litigation and the

21   Related Cases, and previous experience with FLSA litigation.  Therefore this factor

22   weighs in favor of approval.

23       The Court may also take into account the opinions of participating plaintiffs when

24   determining whether a settlement is fair and reasonable.  At the hearing, Plaintiffs'

25   counsel confirmed that the all plaintiffs have received notice of the settlement and a copy

26   of the settlement agreement itself.  Additionally, Plaintiffs' counsel assert that a

27

28

settlement committee including the three named Plaintiffs support the settlement. Cunningham Decl. ¶ 23.  Plaintiffs' counsel received no objections to the tentative settlement agreement and explained to individual plaintiffs how their portion of the settlement would be calculated.  ECF No. 94.  The Court therefore finds that the lack of objection from individual plaintiffs weighs in favor of settlement approval.

### 6. Possibility of Fraud or Collusion

The Court finds no evidence that the Settlement resulted from, or was influenced by, fraud or collusion.  "A key factor supporting this finding is that the amount of the individual settlement payments to be received by opt-in members is based on an analysis of employee time records." *Selk*, 159 F. Supp. 3d at 1179.  "This approach guards against the arbitrariness that might suggest collusion." *Id.*  Here, the Parties' Settlement does not involve a lump sum of money to be divided on an arbitrary basis by all plaintiffs but instead, the size of each plaintiff's recovery has been calculated based the percentage of the total damages potentially recoverable by each plaintiff, as determined by their time records and payroll data and applicable statute of limitations for each plaintiff. Settlement Agreement at 5–6; ECF No. 92 at 20–21.  As noted above, the City's expert calculated the amount each plaintiff would recover under both the City and Plaintiffs' methodology theories, and then deducted any credits to which the Parties agreed the City was entitled. *Id.*  Additionally, the record in this case shows that the Settlement was the result of arms-length negotiations: The Parties' counsel conducted several telephonic and in-person settlement conferences with Magistrate Bernard Skomal, in addition to discussions regarding settlement among the Parties' counsel. *E.g.*, ECF Nos. 74, 76, 81, 83; Aitchison Decl. ¶ 39.  The Court thus finds that there is no evidence that fraud or collusion exists.

Accordingly, the Court finds that the Settlement Agreement is a fair and reasonable resolution of the bona fides disputes in this litigation.

14

**C. Attorney's Fees**

The FLSA provides that in an action asserting failure to pay proper overtime, the Court shall "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award."  *Selk*, 159 F.Supp.3d at 1180.  The Settlement Agreement proposed here provides for the payment of attorney's fees.  Altogether, the Settlement Agreement provides that Plaintiffs' counsel will recover $722,500 in attorney's fees, or 21.25% of the gross settlement amount.[5]

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994).  "Under either approach, '[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion.'"  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015) (quoting *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002)).  Once a method is selected, the Ninth Circuit encourages district courts to cross-check with the other method in order to guard against an unreasonable result.  *In re Bluetooth*, 654 F.3d 944 ("Thus, even though the lodestar method may be a perfectly appropriate method of fee calculation, we have also encouraged courts to guard against

---

[5] The settlement agreement splits the attorney's fees between the amount the City agreed to pay towards Plaintiffs' attorney's fees and litigation costs ($250,000) and the amount Plaintiffs' counsel proposed to be paid out from the liquidated damages portion of the settlement fund as a contingency fee ($472,500). For the purposes of determining whether the proposed attorney's fees are reasonable, the Court sees no reason to disaggregate these sums.

15

an unreasonable result by cross-checking their calculations against a second method."); *Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"); *In re Toys R U-Delaware, Inc. –Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 459 (C.D. Cal. 2014) ("a court applying the lodestar method to determine attorney's fees may use the percentage-of-the-fund analysis as a cross-check").

### 1. Percentage-of-the-fund Approach

The percentage of the settlement amount allocated to Plaintiffs' counsel in the Settlement Agreement, 21.25%, is within the "typical range of acceptable attorneys' fees in the Ninth Circuit" and consistent with the percentage awarded in other cases. *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting typical range is between "20% to 33 1/3 % of total settlement value"); *Hopkins v. Stryker Sales Corp.*, No. 11-2786, 2013 WL 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (acknowledging same and awarding 30%); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("[a] review of recent reported cases discloses that nearly all common fund awards range around 30%"); *Pokorny v. Quixtar, Inc.*, No. 07-00201 SC, 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) (acknowledging same, stating 30% award is "the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage" and granting fee request of 27.3%).

Moreover, "[i]n awarding percentages of the class fund, courts frequently take into account the size of the fund." *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008). It is established that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method, with 20 to 30% as the usual range in common fund cases where the recovery is between $50 and $200 million. *Vizcaino*, 290 F.3d at 1047, 1050 n.4. In cases where the common fund is under

16

$10 million, fees are often above 25%. *Craft*, 624 F.Supp.2d at 1127 (citing *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297–98 (N.D. Cal. 1995) ("[m]ost of the cases Class Counsel have cited in which high percentages such as 30–50 percent of the fund were awarded involved relatively smaller funds of less than $10 million"). "Other case law surveys suggest that 50% is the upper limit, with 30–50% commonly being awarded in case in which the common fund is relatively small." *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at * 6 (C.D. Cal. July 27, 2010) (citing Rubenstein, Conte and Newberg, NEWBERG ON CLASS ACTIONS at § 14:6). Therefore, the 21.25% of the common fund of $3,400,000 set forth in the Settlement Agreement is at the low end of percentage awards in cases involving a relatively small common fund.

"Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit in *Vizcaino* identified several factors for courts to consider in determining whether a percentage-based award is reasonable: "(1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was handled on a contingency basis." *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020) (citing *Vizcaino*, 290 F.3d at 1048–50). Here, Plaintiffs contend that the amount requested is reasonable because of the risks involved in the litigation, the potential for non-payment due to the contingent nature of the case, the preclusion of other work, the "positive" result obtained for Plaintiffs and counsel's skill and experience, and each plaintiff's agreement to the contingency fee. ECF No. 92 at 24–25.

1    "The risk that further litigation might result in Plaintiffs not recovering at all,

2    particularly a case involving complicated legal issues, is a significant factor in the award

3    of fees." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046–47 (N.D. Cal. 2008)

4    (citing *Vizcaino*, 290 F.3d at 1048).  Plaintiffs explain that the outcome of the litigation

5    was "anything but certain" because the defenses the City was likely to raise could have

6    had a substantial impact on damages, because work period rules specific to firefighters

7    put their potential recovery at a disadvantage compared to plaintiffs in the Related Cases,

8    and because the City appeared to be "aggressively defending the Related Cases."  ECF

9    No. 92 at 25.  However, as Plaintiffs note, there was little risk that Plaintiffs would have

10   no recovery at all given the outcome of *Flores*.  *Id.*  The Court also notes that the Related

11   Cases, which involved substantially similar issues, had already made "substantial

12   progress . . . towards settlement" by the time Plaintiffs filed this case in April 2019.  *E.g.*,

13   Case No. 17-cv-1464, ECF No. 230.  Because of the progress in the Related Cases,

14   Plaintiffs would have had a clearer idea of the issues involved and their litigation

15   prospects at the time they filed than they would have had the Related Cases not led the

16   way.  Still, the Court recognizes that Plaintiffs' counsel still bore some risk, including

17   particular risks related to FLSA work period rules applicable only to firefighters.  The

18   Court therefore finds that the case entailed some degree of risk given that the City had

19   several potentially meritorious defenses, although it does not find that the case was

20   "extremely risky." *Vizcaino*, 290 F.3d at 1048.  The Court also recognizes that the risk

21   inherent in a contingency fee arrangement has been recognized by courts as a factor

22   justifying a higher fee award, and that the fact that individual plaintiffs agreed to higher

23   contingency fee rates than those sought here is probative of the requested fee's

24   reasonableness.  *See Wash. Pub. Power Supply*, 19 F.3d at 1299–1300; *Vizcaino*, 290

25   F.3d at 1049–50.

As to the burdens of the litigation on the attorneys' ability to take on other work, the Court finds this factor somewhat supports Plaintiffs' request.  One of Plaintiffs' counsel represents that he declined at least three other engagements because of the demands of this litigation.  Aitchison Decl. ¶ 56.  On the other hand, the Court notes that the case was settled within about a year and a half of filing, did not entail formal discovery, and involved limited motion practice (specifically, a motion to strike the City's affirmative defenses and motion for certification of the collective action, both of which were ultimately withdrawn pursuant to stipulation).  However, Plaintiffs' billing records reflect that counsel did spend significant time on the case, *see* ECF Nos. 92 at 27; 92-4; 92-12; 97-2, indicating that the litigation did present some burden that prevented counsel from taking on additional cases.  This factor therefore weighs in favor of the fee award.

Lastly, although Plaintiffs state that "the result obtained in the settlement is a positive one for Plaintiffs," they do not explain how the result was "exceptional" as found relevant in *Vizcaino*.  Every case in which attorney's fees are recoverable under the FLSA inherently involves some degree of a "positive" result, as attorney's fees are only available when a judgment is awarded to the plaintiffs.  29 U.S.C. § 216(b).  Although Plaintiffs' counsel did achieve a significant settlement for Plaintiffs, resulting in a higher payout than would have occurred had the City prevailed on the methodology issue, Plaintiffs have not established that the results obtained were sufficiently "exceptional" to merit a particularly high fee award.  *Cf. Vizcaino*, 290 F.3d at 1048 (noting "that counsel pursued this case in the absence of supporting precedents, in the face of agreements signed by the class members forsaking benefits[,] . . . and against [defendant's] vigorous opposition throughout the litigation"); *Monterrubio*, L.P., 291 F.R.D. at 456 (finding that recovery equal to 30% of defendant's maximum potential liability was not, considering the circumstances of the case, an exceptional result).  Further, although the Court does

not doubt counsel's experience and skill in litigating FLSA cases, the settlement in this case was modeled substantially after the settlement approved in the Related Cases, and the bona fide disputes presented in this case largely overlap with those at issue in the Related Cases.  Plaintiffs therefore have not demonstrated that unusual skill was required to successfully litigate this case.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008).

Accordingly, the Court's review of the *Vizcaino* factors suggests that the fee amount requested by Plaintiffs is somewhat reasonable.  However, given that several of the *Vizcaino* factors do not weigh strongly in favor of finding the requested award reasonable, conducting a lodestar cross-check is appropriate.

### 2.  Lodestar Cross-Check

Even if amount allocated to attorney's fees in the Settlement Agreement is consistent with the percentage-of-the-fund approach, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The lodestar is calculated by multiplying the number of hours counsel reasonably expended on the litigation by the reasonably hourly rate for each attorney, considering regional market rates and the attorney's experience and skill.  *In re Bluetooth*, 654 F.3d at 941.  Here, Plaintiffs have provided a lodestar calculation, including the rates charged and the hours billed by each attorney as set forth in contemporaneous billing records kept by each attorney.  ECF Nos. 92 at 27; 92-4; 92-12; 97-2.  Based on Plaintiffs' claimed hours and rates, the lodestar calculation works out to $333,870, rendering the $722,500 allocated to attorney's fees in the Settlement Agreement about 2.16 times the lodestar amount.  Without conducting an in-depth analysis of each timesheet entry filed by counsel, the Court finds that the hours

included in the lodestar calculation are, overall, reasonable for the purposes of the lodestar cross-check, given the scope of the collective action and the issues involved.[6] *See Lopez v. Mgmt. & Training Corp.*, No. 17CV1624 JM(RBM), 2020 WL 1911571, at *9 (S.D. Cal. Apr. 20, 2020).  Additionally, the rates included in the lodestar calculation appear reasonable based on the experience of counsel.  Aitchison Decl. ¶¶ 9–18, 23; Napier Decl. ¶¶ 5–8; Cunningham Decl. ¶¶ 3–8; *see Vasquez v. Kraft Heinz Foods Co.*, No. 3:16-CV-2749-WQH-BLM, 2020 WL 1550234, at *1–2, 7 (S.D. Cal. Apr. 1, 2020) (approving of rates between $700 and $725 for attorneys with approximately 30 years of experience and rate of $550 for attorney with 12 years of experience); *Lopez*, 2020 WL 1911571, at *8–9 (approving of rates including $500 for an associate with nine years of experience and $725/$875 for attorneys with over thirty years of experience).

The Court therefore must determine whether to adjust the amount allocated to attorney's fees in the settlement, based on the discrepancy between the lodestar calculation and the percentage-of-the-fund approach.  *See Six Mexican Workers*, 904 F.2d at 1311; *Vizcaino*, 290 F.3d at 1050 ("Where [an attorney's] investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable.").  Plaintiffs here suggest that a lodestar multiplier would be appropriate and confirm the reasonableness of the percentage of the fund requested, but do not specifically identify what considerations would merit a lodestar multiplier in this case.  ECF No. 92 at 27.  They cite cases in which courts in the Ninth Circuit have approved awards that were more than twice the lodestar amount.  One case cited by Plaintiffs, *Del Gallego Demapan v. Zeng's Am. Corp.*, approved a fee over twice the

---

[6] The Court does note that the entries by legal assistant Jaclyn Salamony do include some non-recoverable hours for clerical duties, *see Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009), suggesting that an accurate lodestar calculation excluding these hours may be several thousand dollars less than that calculated by Plaintiffs. However, Plaintiffs also stated at the hearing that they are not seeking to separately recover $19,853 in litigation costs, which would balance out the lodestar estimate.

1  lodestar calculation in part because the settlement recovered "100% of [plaintiffs']

2  unpaid wages and 100% liquidated damages for their FLSA claims," attorney would

3  continue to represent plaintiffs for two years.  *See Del Gallego Demapan v. Zeng's Am.*

4  *Corp.*, No. 18-CV-00010, 2019 WL 1120019, at *4 (D. N. Mar. I. Mar. 11, 2019).  Here,

5  although Plaintiffs' counsel obtained a good result for their clients in light of the

6  litigation risks, they did not obtain such a stark victory as in *Del Gallego Demapan*,

7  making the case a less useful comparison point.

8       The district court in *Avila v. Cold Spring Granite Co.* reduced the requested award

9  from about three times the lodestar to two and a half times the lodestar, "[i]n light of the

10 strong results for the class, the favorable class reaction, and counsel's willingness to take

11 the matter on contingency." *Avila v. Cold Spring Granite Co.*, No.

12 116CV001533AWISKO, 2018 WL 400315, at *12 (E.D. Cal. Jan. 12, 2018).  The

13 "strong results" referred to in *Avila* was a "net settlement amount [of] roughly 16% of the

14 more realistic maximum recovery amount," which the court noted was "at the low end"

15 of the acceptable range for settlement approval. *Id.* at *6, 9.  In *Vega v. Weatherford*, the

16 magistrate judge found some of the *Vizcaino* factors weighed against an award above the

17 25% "benchmark," and ultimately awarded counsel a fee of 25% of the common fund,

18 equivalent to 3.97 times the lodestar. *Vega v. Weatherford U.S., Ltd. P'ship*, No. 1:14-

19 CV-01790-JLT, 2016 WL 7116731, at *17, n.2 (E.D. Cal. Dec. 7, 2016).  The Court

20 notes that the results obtained in this case appear more successful than that in *Avila* and

21 that, like in *Vega*, not all the *Vizcaino* factors weigh strongly in favor of a higher award.

22 However, the Court is not convinced that the analyses in *Avila* or *Vega* counsel strongly

23 in favor of a significant lodestar multiplier here.[7]  Those cases approached the lodestar

24

25 _____

26 [7] Although the court in *Morgret v. Applus Technologies*, also cited by Plaintiffs, found that a lodestar
27 multiplier of approximately 3.9 was appropriate because it was "within the range typically awarded in

28

1   multiplier from the perspective of whether an upward departure from the 25% benchmark

2   was appropriate.  But as the Ninth Circuit has noted, the 25% figure, or any percentage, is

3   just "a starting point for analysis" and "at best a rough approximation of a reasonable

4   fee," whereas the lodestar method is "presumptively reasonable."  *Vizcaino*, 290 F.3d at

5   1048; *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019).

6          Accordingly, the Court concludes that the percentage-based amount requested by

7   Plaintiffs in this case should be reduced to the low end of the typical range awarded,

8   given the significant difference between the amount requested and the lodestar

9   calculation and Plaintiffs' lack of explanation for a lodestar adjustment.  Because

10  Plaintiffs' counsel took the case on a contingent basis and there were significant litigation

11  uncertainties, the Court finds that a reasonable fee is $680,000, or 20% of the gross

12  settlement amount of $3,400,000, plus $19,853 in litigation costs.  Plaintiffs' counsel is

13  therefore entitled to the $250,000 allotted to attorney's fees in the settlement agreement,

14  plus $449,853 to paid out from the liquidated damages allocated to Plaintiffs.

15  \ \ \

16  \ \ \

17  \ \ \

18  \ \ \

19  \ \ \

20  \ \ \

21  \ \ \

22  \ \ \

23  \ \ \

24

25  _____

26  the Ninth Circuit," it did not explain why a lodestar adjustment was merited in that case.  *Morgret v.*

27  *Applus Techs., Inc.*, No. 1:13-CV-01801-JLT, 2015 WL 3466389, at *17 (E.D. Cal. June 1, 2015).

28

## IV.    CONCLUSION AND ORDER

Here, after evaluating the Settlement Agreement under the totality of circumstances described above, the Court finds it to be a fair and reasonable resolution of a bona fide dispute over FLSA provisions.  Accordingly, the Court GRANTS Plaintiff's motion for approval of settlement.

**IT IS HEREBY ORDERED** that,

1. The Settlement Agreement submitted to the Court as Exhibit 1 to the Declaration of Alison P. Adema (ECF No. 93-2) is approved as a fair and just negotiated resolution of bona fide disputes between the Parties, and the Parties shall fully abide by and perform the Settlement Agreement in its entirety and according to its terms;

2. The action is dismissed WITH PREJUDICE as to the 705 Plaintiffs identified on Exhibit A to the Settlement Agreement.

3. Pursuant to the Settlement Agreement, the Court approves the payment of a contingency fee to Plaintiffs' counsel on a pro rata basis from Plaintiffs' liquidated damages in the amount of $449,853, including costs, in addition to the $250,000 allotted to attorney's fees in the settlement agreement.

4. The Court retains jurisdiction over the above-captioned lawsuit for the purposes of enforcing the Settlement Agreement.

5. Judgment is hereby entered on the terms set forth above.


**IT IS SO ORDERED.**

Dated:  February 8, 2021

Hon. Gonzalo P. Curiel
United States District Judge

19-cv-622-GPC-BGS